IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Case No. 5:18-cv-00148

| | |
|---|---|
| BETTY EILEEN DONOVAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BRAGG MUTUAL FEDERAL CREDIT UNION )<br>and JOHN SZOKA, individually, )<br>)<br>Defendants. )<br>_____) | **COMPLAINT** |

Plaintiff Betty Eileen Donovan ("Ms. Donovan"), by and through her attorneys, brings this action against the above-captioned Defendants.

## NATURE OF THE CASE

1. This case involves a sixty-four (64) year old woman who, for more than three decades, dedicated her professional life completely to the betterment of Bragg Mutual Federal Credit Union ("Bragg Mutual") and the membership it serves.

2. Bragg Mutual's website states that its "goal is to serve all of our members in the best manner possible . . . Each member counts . . . This is the Bragg Mutual Federal Credit Union Difference – just ask us."

3. John Szoka is the Chairman of Bragg Mutual's Board of Directors. He also is a member of North Carolina's General Assembly, serving the House District covering Bragg Mutual and most of its membership. On one of his websites, Mr. Szoka boasts that he "is committed to leaving North Carolina a better place for our children and grandchildren."

4. Contrary to their stated goals and principles, Mr. Szoka and Bragg Mutual have rewarded Ms. Donovan's long-standing service by taking a host of discriminatory, retaliatory

and otherwise unlawful actions against her. This has permanently damaged Ms. Donovan's reputation and otherwise inflicted substantial injury upon her.

5. As the State Congressional representative for many of Bragg Mutual's members, Mr. Szoka should know better. So, should Bragg Mutual.

6. Nevertheless, instead of treating Ms. Donovan in the lawful and dignified manner she deserves, Bragg Mutual and Mr. Szoka continually have refused the right thing. It is for these reasons that Ms. Donovan has filed the instant lawsuit.

## PARTIES, JURISDICTION & VENUE

7. Ms. Donovan is a citizen and resident of Cumberland County, North Carolina. She has been (and continues to be) a long-time member of Bragg Mutual.

8. Bragg Mutual is a member-owned and insured federal credit union, operating under the Federal Credit Union Act ("FCUA"). It is licensed to do business and is currently doing business in the State of North Carolina.

9. John Szoka is the Chairman of Bragg Mutual's Board of Directors. He is a citizen and resident of Cumberland County, North Carolina.

10. Mr. Szoka served as Bragg Mutual's agent and within the scope of his duties to Bragg Mutual concerning all of the acts complained of herein.

11. Alternatively, Mr. Szoka acted individually on his own behalf with regard to all of the acts complained of herein; acted based upon personal interests that were wholly separable from Bragg Mutual; and/or acted without authorization from Bragg Mutual.

12. This Court has jurisdiction over both the subject matter of this action and the parties. Venue also is proper in this Court.

# FACTS

**I.     BRAGG MUTUAL'S BOARD OF DIRECTORS**

13.     Pursuant to the FCUA, Bragg Mutual's Board of Directors ("Board") is responsible for governing its general direction and affairs.  Board meetings occur once a month and must comply with the FCUA, which among other things requires that minutes be kept of "all [Board] meetings."  12 U.S.C. § 1761b.

14.     During the relevant time-period, Bragg Mutual's Board has been composed of the following individuals:  John Szoka (Chairman of the Board); Chris Vallery; Eugene Slocum, Jr.; Alan Asbury; Amy Olden; Lee Boughman, Jr.; and Jennifer Cooney.

15.     Board members are provided with the Credit Union Board of Directors Handbook (5th ed.) ("Handbook"), issued by the Credit Union National Association.  Among other things, the Handbook instructs that:

- The Board's decisions "must be guided by the best interests of the membership."  During the relevant time-period, the Board has not complied with this instruction.

- Minutes of Board meetings "must be complete and accurate.  At minimum, minutes must record every motion or official action taken by the board . . . Minutes are part of the corporate records of the credit union . . . They show whether the board followed legislative and regulatory requirements in its deliberations."  During the relevant time period, the Board has not complied with these instructions.

- Any Board decision affecting the President/CEO "should be reached according to the written personnel policies" and that the Board "should be

specific in its reasons for the termination. The CEO should have an opportunity to present his or her defense and to correct the deficiencies the board identified." During the relevant time-period, the Board did not comply with these instructions.

16. Bragg Mutual's Board does not comply with a number of other duties and instructions mandated by the FCUA and/or the Handbook, including as it relates to maintaining appropriate corporate records.

17. As described more fully below, the Board has taken a number of unlawful, adverse employment actions against Mr. Donovan and provided her with no opportunity to correct any purported and pretextual deficiencies.

18. On information and belief, Mr. Szoka has completely dominated the operations and decision-making of the Board and/or has otherwise caused the Board to make decisions based solely upon Mr. Szoka's personal interests wholly separable from Bragg Mutual and regardless of whether such interests were contrary to the interests of Bragg Mutual and/or its membership.

**II. MS. DONOVAN'S EMPLOYMENT AT BRAGG MUTUAL**

19. For over thirty years, Ms. Donovan has dedicated her professional life to Bragg Mutual.

20. Due to her long-standing dedication and accomplishments, Bragg Mutual appointed Ms. Donovan as its President/CEO in November 2015.

21. Ms. Donovan's job performance as President/CEO was impressive. Indeed, in just over two years, Ms. Donovan took Bragg Mutual from facing years of financial deficits before her tenure to a surplus of over $950,000 for fiscal year 2017.

4

22. Ms. Donovan was beloved by Bragg Mutual's members and its employees. She looked forward to spending many more productive years as President/CEO. Unfortunately, Mr. Szoka and/or Bragg Mutual had other plans for Ms. Donovan notwithstanding her overwhelmingly positive job performance.

### III. JOHN SZOKA AND/OR BRAGG MUTUAL REPEATEDLY ENGAGE IN UNLAWFUL CONDUCT TOWARDS MS. DONOVAN

23. Throughout her tenure as President/CEO, Mr. Szoka and the Board engaged in repeated misconduct, including as it relates to Bragg Mutual's well-being in general and to Ms. Donovan's employment in particular.

24. In this regard, and in violation of his duties as Chairman of the Board, Mr. Szoka regularly displayed an unlawful animus towards Ms. Donovan (including based upon her age, gender and/or protected activity) and otherwise attempted to undermine her authority based upon his unlawful animus and due to his own personal interests, to the detriment of Bragg Mutual and its membership.

25. During Board meetings, and based upon his unlawful animus towards Ms. Donovan and for his own personal interests, Mr. Szoka commonly yelled, cursed at and otherwise belittled Ms. Donovan in front of other Board members without justification.

26. Before, during and after Board meetings, Mr. Szoka secretly met with at least one Board member (Jennifer Cooney, a close personal friend of Mr. Szoka) to discuss his personal agenda for undermining Ms. Donovan's authority and otherwise poisoning Ms. Donovan with the rest of the Board. These actions were taken solely to further Mr. Szoka's individual interests and his unlawful animus towards Ms. Donovan, and not in furtherance of Bragg Mutual's membership.

27. In a similar vein, Bragg Mutual employee William Drewry secretly recorded conversations between Ms. Donovan and himself (and played the recordings for Ms. Cooney and possibly others), as conveyed to Ms. Donovan by a third party.

28. During the morning of January 2, 2018, and with Bragg Mutual's Chief Financial Officer ("CFO") present, Ms. Donovan in good-faith terminated William Drewry (Vice-President of Lending/Marketing Director). The good-faith bases for Ms. Donovan's decision were clearly communicated to Mr. Szoka and the rest of the Board. Without any legitimate justification, and later that same day, Mr. Szoka rescinded the termination and reinstated Mr. Drewry to his position. Although Mr. Szoka stated that his decision was supported by the rest of the Board at a meeting called earlier that day, this in fact was false.

29. Mr. Drewry is a close personal friend of Mr. Szoka. He also is the second highest paid individual at Bragg Mutual, making even more than its female CFO even though Mr. Drewry has only worked at Bragg Mutual for 2 years, compared to 17 years for the female CFO.

30. During her tenure, including in the weeks and months leading up to February 2018, and with Bragg Mutual's knowledge, Ms. Donovan reported Mr. Szoka's unlawful conduct/animus to management and representatives from the National Credit Union Administration ("NCUA"). Bragg Mutual not only refused to investigate and/or remedy Mr. Szoka's misconduct, but instead condoned it.

**IV. IN FEBRUARY 2018, MR. SZOKA AND BRAGG MUTUAL TAKE ADVERSE EMPLOYMENT ACTIONS AGAINST MS. DONOVAN FOR PRETEXTUAL AND UNLAWFUL REASONS**

31. On February 15, 2018, and at Mr. Szoka's direction, the Board met for two hours in what it called a "closed session." No notes were taken of the session.

32. After the session concluded, Mr. Szoka unceremoniously advised Ms. Donovan that she was being summarily "suspended" for the vague reason that the Board "no longer trusted her judgment." Mr. Szoka then stated that Ms. Donovan's "suspension" would end with her termination. He demanded her work keys and all of Ms. Donovan's work passwords were immediately terminated.

33. Since February 15, 2018, Bragg Mutual has made no attempt to contact Ms. Donovan. At substantial permanent damage to her reputation, immediately following February 15, Mr. Szoka and/or Bragg Mutual notified a number of outside entities that it had fired Ms. Donovan.

## V. MR. SZOKA AND BRAGG MUTUAL CONTINUE THEIR UNLAWFUL CAMPAIGN AGAINST MS. DONOVAN POST-FEBRUARY 15, 2018

34. Having heard nothing after February 15, Ms. Donovan lodged written complaints with Bragg Mutual's Supervisory Committee beginning in early March 2018. In her complaints, Ms. Donovan comprehensively summarized the unlawful acts, including those alleged herein, that Mr. Szoka and Bragg Mutual took against her.

35. To date, the Supervisory Committee has not addressed Ms. Donovan's complaints and/or remedied any of Defendants' unlawful conduct.

36. On March 13, 2018, Bragg Mutual held its annual membership meeting in Fayetteville, North Carolina.

37. At the meeting, it was clear that the membership had no idea Ms. Donovan was removed as President/CEO, nor had they been made aware of the unlawful acts taken against her.

38. During the March 13 meeting, and at Mr. Szoka's direction and to further his own individual interests, the following events occurred:

- All references to Ms. Donovan were deleted from the 2017 annual report pamphlet distributed to the membership. This was done even though Ms. Donovan served as President/CEO during the entire 2017 fiscal year.

- Mr. Szoka was introduced as Bragg Mutual's President.

- Mr. Szoka took credit for the $950,000+ surplus created during fiscal year 2017, without ever mentioning Ms. Donovan's name or efforts.

- Bragg Mutual's outside counsel was introduced as the "Parliamentarian" for the meeting. Bragg Mutual never previously had a "Parliamentarian" at annual meetings and never used outside counsel for this purpose.

- Leading up to the annual meeting, multiple new individuals were going to put themselves up for election to the Board. This changed after Ms. Donovan raised her complaints. On information and belief, Mr. Szoka and/or others pressured the new individuals into withdrawing their names from the Board election.

39. The March 13 meeting caused substantial confusion with the membership. To that point, multiple members questioned Mr. Szoka about Ms. Donovan's status and about why she was not being referenced during the annual meeting.

40. In response, Mr. Szoka and Bragg Mutual's outside counsel (the "Parliamentarian") refused to provide answers and instead stated that Ms. Donovan's matter was "a personnel matter that the Board has taken" and that they were not "at liberty" to discuss it with the membership.

41. The Parliamentarian then allowed a motion to be granted to table further discussion with the membership on Ms. Donovan's matter but that it could be discussed "at a

later time."

42. On multiple occasions since March 13, 2018, Ms. Donovan has requested that Bragg Mutual schedule a membership meeting to address her "personnel matter," as promised during the March 13 meeting. Bragg Mutual has ignored her requests to date.

43. Ms. Donovan has followed up with the Supervisory Committee multiple times since the March 13 meeting. To date, the Supervisory Committee has done nothing.

44. In March 2018, Ms. Donovan again advised Bragg Mutual and its counsel that she complained in writing to the NCUA about Mr. Szoka's and Bragg Mutual's unlawful conduct.

45. As a direct and proximate cause of Defendants' unlawful actions, Ms. Donovan has suffered substantial emotional and physical distress, and has been otherwise suffered substantial damages.

## FIRST CLAIM FOR RELIEF
**(Wrongful Discharge In Violation Of North Carolina Public Policy)**

46. The allegations in paragraphs 1 through 45 are hereby incorporated by reference.

47. At all relevant times, Ms. Donovan was a female more than forty (40) years of age, engaged in protected conduct and was otherwise within the class of persons protected by N.C. Gen. Stat. § 143-422.2.

48. Bragg Mutual took actions against Ms. Donovan that resulted in adverse employment actions.

49. Ms. Donovan performed her job duties in a satisfactory manner at all relevant times.

50. Ms. Donovan's sex, age and/or protected activity were determinative factors in Bragg Mutual's decision to take such adverse employment actions against her.

51. As a result of Bragg Mutual's unlawful employment actions, Ms. Donovan has incurred damages and is entitled to back pay, front pay and other forms of relief.

52. It is the public policy of the State of North Carolina to protect and safeguard the right and opportunity of all persons who hold employment without discrimination based on sex, age and/or protected conduct, as manifested in N.C. Gen. Stat. § 143-422.2.

53. Bragg Mutual's adverse employment actions against Ms. Donovan because of her sex, age and/or protected activity is a violation of the public policy of the State of North Carolina, and Ms. Donovan has suffered substantial damages as a result.

54. The conduct, acts and omissions of Bragg Mutual constitute malicious, willful and wanton conduct or are in reckless disregard and indifference to Ms. Donovan's rights.

### SECOND CLAIM FOR RELIEF
### (FCUA Whistleblower Claim – 12 U.S.C. § 1790b)

55. The allegations in paragraphs 1 through 54 are hereby incorporated by reference.

56. At all relevant times, Bragg Mutual was (and is) an insured credit union covered by the provisions of the FCUA, including 12 U.S.C. § 1790b.

57. Ms. Donovan was an employee of Bragg Mutual.

58. During her employment, Ms. Donovan made reports to the NCUA and provided information to the NCUA regarding possible violations of law and/or regulations by John Szoka and/or Bragg Mutual.

59. As a result of her reports to the NCUA and her provision of information to the NCUA, Bragg Mutual and/or John Szoka discriminated against Ms. Donovan in the terms, conditions and privilege of her employment.

60. As a result of Defendants' unlawful discrimination and retaliation against her, Ms. Donovan has suffered, and continues to suffer, ongoing financial damage as well as severe

emotional and other distress.

61. The above allegations establish that Bragg Mutual and/or John Szoka acted with malice and/or reckless indifference towards and disregard for Ms. Donovan's federally protected rights to be free from discrimination and retaliation because of her reports to the NCUA.

### THIRD CLAIM FOR RELIEF
(Tortious Interference With Contract)

62. The allegations in paragraphs 1 through 61 are hereby incorporated by reference.

63. Mr. Szoka used his position with Bragg Mutual to have adverse employment actions taken against Ms. Donovan, as alleged herein.

64. Mr. Szoka acted solely for his own personal interests, and not in the interests of Bragg Mutual, in using his position with Bragg Mutual to have adverse employment actions taken against Ms. Donovan.

65. Ms. Donovan was validly and otherwise employed by Bragg Mutual as President/CEO and otherwise had an employment contract with Bragg Mutual. Mr. Szoka was aware of this fact.

66. Mr. Szoka intended to induce Bragg Mutual to wrongfully terminate Ms. Donovan.

67. Mr. Szoka acted maliciously, without justification, and for the purpose of having Bragg Mutual take unlawful adverse employment actions against Ms. Donovan.

68. Bragg Mutual took unlawful adverse employment actions against Ms. Donovan.

69. Mr. Szoka's actions were the cause of Bragg Mutual's unlawful adverse employment actions against Ms. Donovan.

70. Ms. Donovan has suffered damages as a result.

## FOURTH CLAIM FOR RELIEF
### (Civil Conspiracy)

71. The allegations in paragraphs 1 through 70 are hereby incorporated by reference.

72. With respect to the allegations contained herein, Mr. Szoka acted for his own individual/personal interests (including but not limited to unfairly trying to take credit for Bragg Mutual's successful operations during Ms. Donovan's tenure so that he could gain favor with his political constituents), and not in any official/corporate capacity to Bragg Mutual. These individual/personal interests were wholly separable from Bragg Mutual's interests.

73. With respect to the allegations contained herein, Mr. Szoka acted without authorization from Bragg Mutual.

74. Mr. Szoka and Bragg Mutual, together, agreed and conspired to commit fraud and other unlawful conduct alleged herein against Ms. Donovan.

75. As a result of Mr. Szoka's and Bragg Mutual's actions, Ms. Donovan suffered damages.

## FIFTH CLAIM FOR RELIEF
### (Punitive Damages)

76. The allegations in paragraphs 1 through 75 are hereby incorporated by reference.

77. The actions of Mr. Szoka and/or Bragg Mutual as set forth above were willful, wanton and malicious.

78. As a direct, foreseeable and proximate results of Mr. Szoka's and/or Bragg Mutual's willful, wanton and malicious conduct, Ms. Donovan has suffered substantial damages.

WHEREFORE, Ms. Donovan respectfully requests the following relief:

a. Judgment against all Defendants, jointly and severally, for compensatory damages plus interest as allowed by law and to be more particularly determined at trial;

b. Judgment against all Defendants, jointly and severally, for punitive damages plus interest as allowed by law and to be more particularly determined at trial;

c. That she recovers from Defendants, jointly and severally, the reasonable costs of attorneys' fees incurred in the prosecution of this action, plus interest as allowed by law;

d. That all costs of this action be taxed against Defendants;

e. That all issues in this case be tried by a jury; and

f. For such other and further relief that the Court deems appropriate.

Respectfully submitted this 9th day of April, 2018.

**THE NOBLE LAW FIRM, PLLC**

*/s/ Nicholas J. Sanservino, Jr.*
Nicholas J. Sanservino, Jr. (N.C. Bar No. 36557)
Laura L. Noble, Esq. (N.C. Bar No. 38691)
141 Providence Road, Suite 210
Chapel Hill, N.C. 27514
Telephone:  (919) 251-6008
Facsimile:  (919) 869-2079
nick@thenoblelaw.com
lnoble@thenoblelaw.com
*Attorneys for Plaintiff*