IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Case No. 5:18-cv-00148-FL

| | |
|---|---|
| BETTY EILEEN DONOVAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BRAGG MUTUAL FEDERAL CREDIT UNION )<br>and JOHN SZOKA, individually, )<br>)<br>Defendants. )<br>_____ ) | **FIRST AMENDED COMPLAINT** |

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff Betty Eileen Donovan ("Ms. Donovan"), by and through her attorneys, files this First Amended Complaint against the above-captioned Defendants.

## NATURE OF THE CASE

1. This case involves blatant, unlawful treatment against a sixty-four (64) year old woman who, for more than three decades, dedicated her professional life completely to the betterment of Bragg Mutual Federal Credit Union ("Bragg Mutual") and the membership it serves.

2. Bragg Mutual's website states that its "goal is to serve all of our members in the best manner possible . . . Each member counts . . . This is the Bragg Mutual Federal Credit Union Difference – just ask us."

3. John Szoka is the Chairman of Bragg Mutual's Board of Directors. He also is a member of North Carolina's General Assembly, serving the House District covering Bragg Mutual and most of its membership. Mr. Szoka is running for re-election in November 2018 and, for the first time in a while, will face an opposition candidate in his re-election bid. As

such, and given his high profile political role, Mr. Szoka possesses unique, personal interests separate and apart from Bragg Mutual.

4. On one of his websites, Mr. Szoka boasts that he "is committed to leaving North Carolina a better place for our children and grandchildren."

5. Contrary to their stated goals and principles, Mr. Szoka and Bragg Mutual have rewarded Ms. Donovan's long-standing service by taking a host of discriminatory, retaliatory and otherwise unlawful actions against her. This has permanently damaged Ms. Donovan's reputation and otherwise inflicted substantial injury upon her.

6. As the State Congressional representative for many of Bragg Mutual's members, Mr. Szoka should know better. So should Bragg Mutual.

7. Nevertheless, instead of treating Ms. Donovan in the lawful and dignified manner she deserves, Bragg Mutual and Mr. Szoka continually have refused to do the right thing. It is for these reasons that Ms. Donovan has filed the instant lawsuit.

## PARTIES, JURISDICTION & VENUE

8. Ms. Donovan is a citizen and resident of Cumberland County, North Carolina. She has been (and continues to be) a long-time member of Bragg Mutual.

9. Bragg Mutual is a member-owned and insured federal credit union, operating under the Federal Credit Union Act ("FCUA"). It is licensed to do business and is currently doing business in the State of North Carolina.

10. John Szoka is the Chairman of Bragg Mutual's Board of Directors. He is a citizen and resident of Cumberland County, North Carolina.

11. Mr. Szoka served as Bragg Mutual's agent and within the scope of his duties to Bragg Mutual concerning all of the acts complained of herein.

12. Alternatively, Mr. Szoka acted individually on his own behalf with regard to all of the acts complained of herein; acted based upon personal interests that were wholly separable from Bragg Mutual; and/or acted without authorization from Bragg Mutual.

13. This Court has jurisdiction over both the subject matter of this action and the parties. Venue also is proper in this Court.

## FACTS

### I. BRAGG MUTUAL'S BOARD OF DIRECTORS

14. Pursuant to the FCUA, Bragg Mutual's Board of Directors ("Board") is responsible for governing its general direction and affairs. Board meetings occur once a month and must comply with the FCUA, which among other things requires that minutes be kept of "all [Board] meetings." 12 U.S.C. § 1761b.

15. During the relevant time-period, Bragg Mutual's Board has been composed of the following individuals: John Szoka (Chairman of the Board); Chris Vallery; Eugene Slocum, Jr.; Alan Asbury; Amy Olden; Lee Boughman, Jr.; and Jennifer Cooney.

16. Board members must comply with Bragg Mutual's bylaws, as well as the FCUA and its regulations. During the relevant time-period, the Board has not done so.

17. Board members are provided with the Credit Union Board of Directors Handbook (5th ed.) ("Handbook"), issued by the Credit Union National Association. The Handbook contains provisions that are consistent with Bragg Mutual's bylaws, the FCUA and its regulations.

18. Among other things, the Handbook instructs that:

- The Board's decisions "must be guided by the best interests of the membership." During the relevant time-period, the Board has not

3
Case 5:18-cv-00148-FL   Document 16   Filed 05/25/18   Page 3 of 19

complied with this instruction, in violation of the Handbook, Bragg Mutual's bylaws and/or the FCUA.

- Minutes of Board meetings "must be complete and accurate. At minimum, minutes must record every motion or official action taken by the board . . . Minutes are part of the corporate records of the credit union . . . They show whether the board followed legislative and regulatory requirements in its deliberations." During the relevant time period, the Board has not complied with these instructions, in violation of the Handbook, Bragg Mutual's bylaws and/or the FCUA.

- Any Board decision affecting the President/CEO "should be reached according to the written personnel policies" and that the Board "should be specific in its reasons for the termination. The CEO should have an opportunity to present his or her defense and to correct the deficiencies the board identified." During the relevant time-period, the Board did not comply with these instructions, in violation of the Handbook, Bragg Mutual's bylaws and/or the FCUA.

19. Bragg Mutual's Board does not comply with a number of other duties and instructions mandated by the Handbook, Bragg Mutual's bylaws and/or the FCUA, including as it relates to maintaining appropriate corporate records.

20. As described more fully below, the Board has taken a number of unlawful, adverse employment actions against Ms. Donovan and provided her with no opportunity to correct any purported and pretextual deficiencies. This was done in violation of the Handbook, Bragg Mutual's bylaws, the FCUA and other laws prohibiting employment discrimination and

retaliation.

21. Mr. Szoka has completely dominated the operations and decision-making of the Board and/or has otherwise caused the Board to make decisions based solely upon Mr. Szoka's personal interests wholly separable from Bragg Mutual and regardless of whether such interests were contrary to the interests of Bragg Mutual and/or its membership. Likewise, and in this regard, the Board has delegated its authority to Mr. Szoka and his personal interests. This violates the Handbook, the FCUA and its regulations, including 12 C.F.R. § 701.4(a).

## II. MS. DONOVAN'S EMPLOYMENT AT BRAGG MUTUAL

22. For over thirty years, Ms. Donovan dedicated her professional life to Bragg Mutual.

23. Due to her long-standing dedication and accomplishments, Bragg Mutual appointed Ms. Donovan as its President/CEO in November 2015.

24. As President/CEO, Ms. Donovan was entitled to earn substantial compensation, including but not limited to an annual salary; eligibility for annual bonuses and salary increases; paid leave; and the like.

25. Ms. Donovan's job performance as President/CEO was impressive. Indeed, in just over two years, Ms. Donovan took Bragg Mutual from facing years of financial deficits before her tenure to a surplus of over $950,000 for fiscal year 2017.

26. Ms. Donovan was beloved by Bragg Mutual's members and its employees. She looked forward to spending many more productive years as President/CEO. Unfortunately, Mr. Szoka and/or Bragg Mutual had other plans for Ms. Donovan notwithstanding her overwhelmingly positive job performance.

### III. JOHN SZOKA AND/OR BRAGG MUTUAL REPEATEDLY ENGAGE IN UNLAWFUL CONDUCT TOWARDS MS. DONOVAN

27. Throughout her tenure as President/CEO, Mr. Szoka and the Board engaged in repeated misconduct, including as it relates to Bragg Mutual's well-being in general and to Ms. Donovan's employment in particular.

28. In this regard, and in violation of his duties as Board Chairman, the FCUA and other law, Mr. Szoka regularly displayed an unlawful animus towards Ms. Donovan (including based upon her age, gender and/or protected activity) and otherwise attempted to undermine her authority based upon his unlawful animus and due to his own personal interests, to the detriment of Bragg Mutual and its membership.

29. For example, on multiple occasions and as recently as late 2017, Mr. Szoka advised Ms. Donovan to her face that due to her age, he believed she was "antiquated" and was incapable of bringing "fresh ideas" to Bragg Mutual. Mr. Szoka made these comments in and outside of Board meetings and sometimes in front of others, to Ms. Donovan's substantial embarrassment and humiliation. Mr. Szoka has not made similar discriminatory comments to male employees of comparable age to Ms. Donovan.

30. On multiple occasions and including in the weeks/months before February 2018, Ms. Donovan advised Mr. Szoka (and others) that he and the Board were engaging in conduct that violated Bragg Mutual's bylaws, the FCUA and its regulations. Ms. Donovan's good-faith complaints to Mr. Szoka visibly angered and frustrated him.

31. In a similar vein, Ms. Donovan also communicated Mr. Szoka's and Bragg Mutual's unlawful conduct/animus to representatives of the National Credit Union Administration ("NCUA").

32. For example, in approximately Fall/Winter 2017, Ms. Donovan advised the NCUA that Mr. Szoka and/or the rest of the Board: (i) were not carrying out their duties as directors in good-faith and/or in a manner in which they reasonably believed was in the best interests of the membership as a whole, in violation of Bragg Mutual's bylaws, the FCUA and its regulations (including 12 U.S.C. 701.4(b)(1)); (ii) were not administering Bragg Mutual's affairs "fairly and impartially and without discrimination in favor of or against any particular member," in violation of 12 U.S.C. § 701.4(b)(2), the FCUA and/or Bragg Mutual's bylaws; (iii) were not directing management's operations in conformity with the requirements of the FCUA and other law, in violation of 12 U.S.C. § 701.4(b)(4), the FCUA and/or Bragg Mutual's bylaws; (iv) were unlawfully discriminating and retaliating against Ms. Donovan, in violation of employment statutes, Bragg Mutual's bylaws and/or the FCUA; (v) failed to maintain accurate minutes of all Board meetings, in violation of Bragg Mutual's bylaws and/or the FCUA; and (vi) allowed Mr. Szoka to completely dominate Bragg Mutual's Board for his own personal interests, in violation of Bragg Mutual's bylaws and/or the FCUA.

33. Mr. Szoka and the Board were aware of Ms. Donovan's good-faith complaints to management and the NCUA as early as Fall/Winter 2017. Bragg Mutual and Mr. Szoka not only refused to investigate and/or remedy the aforementioned misconduct, but instead condoned it. Mr. Szoka in particular was furious that Ms. Donovan lodged complaints with the NCUA.

34. During Board meetings, and based upon his unlawful animus towards Ms. Donovan and for his own personal interests, Mr. Szoka commonly yelled, cursed at and otherwise belittled Ms. Donovan in front of other Board members without justification. Mr. Szoka has not treated male employees in this manner.

35. For example, at a Board meeting on October 19, 2017, Mr. Szoka got right up into

Ms. Donovan's face; falsely accused her of lying to the Board; and screamed the following words at her in front of the entire Board and multiple staff members: "Fuck, what the hell Eileen, are you lying to this Board with this bullshit to cover for the employee . . . God damn, you better never lie to this Board again, do you hear me, don't ever fucking lie to this Board!" Mr. Szoka has not spoken to male employees in this manner.

36. Ms. Donovan feared for her safety while Mr. Szoka berated her at the October 19, 2017 Board meeting.

37. At Mr. Szoka's request and direction (and with Bragg Mutual's knowledge and consent), and in violation of Bragg Mutual's bylaws, the FCUA and its regulations (including 12 U.S.C. § 701.2), the minutes for the October 19, 2017 Board meeting were materially changed so that they do not accurately reflect what occurred during the meeting.

38. Before, during and after Board meetings, Mr. Szoka secretly communicated with at least one Board member (Jennifer Cooney, a close personal friend of Mr. Szoka) to discuss his personal agenda for undermining Ms. Donovan's authority and otherwise poisoning Ms. Donovan with the rest of the Board. These actions were taken solely to further Mr. Szoka's individual interests and his unlawful animus towards Ms. Donovan, and not in furtherance of Bragg Mutual's membership.

39. In a similar vein, Bragg Mutual employee William Drewry (another close personal friend of Mr. Szoka) secretly recorded conversations between Ms. Donovan and himself (and played the recordings for Ms. Cooney and possibly others), as conveyed to Ms. Donovan by a third party.

40. Contrary to Bragg Mutual's bylaws, the FCUA and/or its regulations, Mr. Szoka has had Bragg Mutual make at least one unjustified bonus payment to Mr. Drewry. Mr. Szoka

has not engaged in such preferential treatment towards female employees.

41. During the morning of January 2, 2018, and with Bragg Mutual's Chief Financial Officer ("CFO") present, Ms. Donovan in good-faith terminated Mr. Drewry (Vice-President of Lending/Marketing Director) because of, among other things, Mr. Drewry's failure to timely comply with a "Document of Resolution" issued by the National Credit Union Administration ("NCUA"). The good-faith bases for Ms. Donovan's decision were clearly communicated to Mr. Szoka and the rest of the Board.

42. Without any legitimate justification, and later that same day, Mr. Szoka rescinded the termination and reinstated Mr. Drewry to his position. Although Mr. Szoka subsequently represented that his decision was supported by the rest of the Board at a meeting called earlier that day, this in fact was false. Thereafter, Mr. Szoka stripped Ms. Donovan of a material portion of her job duties, including prohibiting her from supervising and/or otherwise managing any of Bragg Mutual's employees.

43. Mr. Szoka's personal decision to summarily rescind Mr. Drewry's termination and his false representations relating thereto violated, among other things, Bragg Mutual's bylaws, the FCUA and its regulations (including 12 C.F.R. 701.4(a)).

44. As noted above, Mr. Drewry is a close personal friend of Mr. Szoka. He also is the second highest paid individual at Bragg Mutual, making even more than its female CFO even though Mr. Drewry has only worked at Bragg Mutual for 2 years, compared to 17 years for the female CFO.

45. Following Mr. Drewry's reinstatement by Mr. Szoka, Ms. Donovan again complained that Mr. Szoka and Bragg Mutual were violating the FCUA. Her good-faith complaints were lodged with Bragg Mutual, Mr. Szoka and the NCUA. Again, Ms. Donovan's

protected and good-faith conduct greatly angered Mr. Szoka.

46. On February 15, 2018, at Mr. Szoka's direction and after Mr. Szoka and Bragg Mutual became aware of Ms. Donovan's protected activity described above, the Board met for two hours in what it called a "closed session." No notes were taken of the session.

47. After the session concluded, Mr. Szoka unceremoniously advised Ms. Donovan that she was being summarily terminated for the vague reason that the Board "no longer trusted her judgment." He demanded her work keys and all of Ms. Donovan's work passwords were immediately terminated.

48. Since that time, Defendants have advised Ms. Donovan that they are (falsely) characterizing her termination as a "suspension" until Defendants hire someone to replace her as President/CEO. Defendants have taken this position even though they have not reinstated Ms. Donovan; materially stripped her of her job duties before her termination; advised third parties that they terminated Ms. Donovan; and otherwise caused her substantial financial damages, including as to her total compensation, reputation and the like.

49. Defendants' purported reasons for terminating Ms. Donovan were pretextual and false. Instead, Defendants terminated Ms. Donovan based upon her age, sex and/or protected conduct.

50. It has been more than three (3) months since Defendants terminated Ms. Donovan. To date, they have hired no one to replace her as President/CEO, to the substantial detriment of Bragg Mutual's membership.

51. Since February 15, 2018, Bragg Mutual has made no attempt to contact Ms. Donovan. At substantial permanent damage to her reputation, immediately following February 15, Mr. Szoka and/or Bragg Mutual notified a number of outside entities that it had fired Ms.

Donovan.

## IV. MR. SZOKA AND BRAGG MUTUAL CONTINUE THEIR UNLAWFUL CAMPAIGN AGAINST MS. DONOVAN POST-FEBRUARY 15, 2018

52. Having heard nothing from Defendants after February 15, 2018, Ms. Donovan lodged additional complaints of unlawful conduct with Bragg Mutual's Supervisory Committee between early March 2018 and May 2018. She also lodged similar complaints with the NCUA through May 2018. Defendants have been aware of these complaints.

53. In her complaints, Ms. Donovan comprehensively summarized the unlawful acts, including those alleged herein, that Mr. Szoka and Bragg Mutual took against her. These complaints included Ms. Donovan's good-faith belief that Defendants discriminated and retaliated against her based upon her age, gender and/or protected activity.

54. To date, the Supervisory Committee has not addressed Ms. Donovan's complaints and/or remedied any of Defendants' unlawful conduct.

55. On March 13, 2018, Bragg Mutual held its annual membership meeting in Fayetteville, North Carolina.

56. At the meeting, it was clear that the membership had no idea Ms. Donovan was terminated as President/CEO, nor had they been made aware of the unlawful acts taken against her.

57. During the March 13 meeting, in retaliation for Ms. Donovan's protected conduct and at Mr. Szoka's direction and to further his own individual interests, the following events occurred:

- All references to Ms. Donovan were deleted from the 2017 annual report pamphlet distributed to the membership. This was done even though Ms. Donovan served as President/CEO during the entire 2017 fiscal year.

- Mr. Szoka was introduced as Bragg Mutual's President.
- Mr. Szoka wrongly took credit for the $950,000+ surplus created during fiscal year 2017, without ever mentioning Ms. Donovan's name or efforts.
- Bragg Mutual's outside counsel was introduced as the "Parliamentarian" for the meeting. Bragg Mutual never previously had a "Parliamentarian" at annual meetings and never used outside counsel for this purpose.
- Leading up to the annual meeting, multiple new individuals were going to put themselves up for election to the Board. This changed after Ms. Donovan raised her complaints. On information and belief, Mr. Szoka and/or others pressured the new individuals into withdrawing their names from the Board election, in violation of Bragg Mutual's bylaws, the FCUA and/or its regulations.

58. Defendants' retaliatory actions at the March 13, 2018 meeting caused substantial permanent damage to Ms. Donovan and her reputation.

59. The March 13 meeting caused great confusion with the membership. To that point, multiple members questioned Mr. Szoka about Ms. Donovan's status and about why she was not being referenced during the annual meeting.

60. In response, Mr. Szoka and Bragg Mutual's outside counsel (the "Parliamentarian") refused to provide answers and instead stated that Ms. Donovan's matter was "a personnel matter that the Board has taken" and that they were not "at liberty" to discuss it with the membership.

61. The Parliamentarian then allowed a motion to be granted to table further discussion with the membership on Ms. Donovan's matter but that it could be discussed "at a later

time."

62. On multiple occasions since March 13, 2018, Ms. Donovan has requested that Bragg Mutual schedule a membership meeting to address her "personnel matter," as promised during the March 13 meeting. Bragg Mutual and its Supervisory Committee have ignored her requests to date.

63. Ms. Donovan has followed up with the Supervisory Committee multiple times since the March 13 meeting, including as recently as May 2018. To date, the Supervisory Committee has done nothing and has otherwise violated its obligations under 12 U.S.C. § 1761d.

64. In March 2018, April 2018 and May 2018, Ms. Donovan again advised Bragg Mutual and its counsel that she complained in writing to the NCUA about Mr. Szoka's and Bragg Mutual's unlawful conduct, as well as the Supervisory Committee's failure to satisfy its obligations under the FCUA and applicable regulations.

65. Ms. Donovan filed her original Complaint in this case on April 9, 2018. She also filed a charge with the Equal Employment Opportunity Commission alleging unlawful age/sex discrimination and retaliation. Since engaging in this protected activity, Defendants have continued their unlawful retaliation against Ms. Donovan.

66. On April 18, 2018, Defendants without explanation or notice sent a copy of the agenda for the April 19, 2018 Board meeting to Ms. Donovan, along with a copy of the purported Board minutes from the March 15, 2018 Board meeting.

67. The March 15, 2018 Board minutes referenced a "closed session" called by Mr. Szoka lasting almost an hour. However, Ms. Donovan did not receive a copy of the "closed session" minutes.

68. Confused by Defendants' actions, Ms. Donovan advised Defendants that she

would attend the April 19, 2018 Board meeting to see why Defendants had provided her with the agenda and minutes referenced above.

69. When Ms. Donovan showed up at the April 19, 2018, Mr. Szoka inappropriately instructed certain individuals to leave the meeting. Thereafter, Mr. Szoka falsely announced that Ms. Donovan was present "to clear up some questions that were asked at the annual meeting." That clearly was not the case, as Mr. Szoka was well aware.

70. Mr. Szoka then falsely stated that this is what was asked for at the March 13, 2018 annual membership meeting so that was Ms. Donovan's opportunity to talk to the Board.

71. Mr. Szoka then used the rest of the April 19, 2018 meeting to try and get Ms. Donovan to admit that the Board somehow had a lawful reason to summarily terminate her employment. Ms. Donovan refused to do so because it simply is not the truth.

72. During the April 19, 2018 Board meeting, at least two Board members supported the allegations contained in Paragraph 28 of Ms. Donovan's original Complaint.

73. Before Ms. Donovan left the April 19, 2018 Board meeting, Ms. Cooney (Mr. Szoka's personal friend) stated to Ms. Donovan that she thought it was "very inappropriate" that Ms. Donovan attended the April 19 meeting, notwithstanding all of the above facts.

74. Ms. Donovan subsequently complained to Bragg Mutual's Supervisory Committee and the NCUA about Defendants' unlawful conduct at the April 19, 2018 Board meeting.

75. Bragg Mutual held another Board meeting on May 17, 2018. In retaliation for her protected conduct, Defendants did not provide Ms. Donovan with any Board minutes from the April 19, 2018 Board meeting or the agenda for the May 17, 2018 Board meeting.

76. As a direct and proximate cause of Defendants' unlawful actions, Ms. Donovan

has suffered substantial emotional and physical distress, and has been otherwise suffered substantial damages.

## FIRST CLAIM FOR RELIEF
### (FCUA Whistleblower Claim – 12 U.S.C. § 1790b)

77. The allegations in paragraphs 1 through 76 are hereby incorporated by reference.

78. At all relevant times, Bragg Mutual was (and is) an insured credit union covered by the provisions of the FCUA, including 12 U.S.C. § 1790b.

79. Ms. Donovan was an employee of Bragg Mutual.

80. During her employment and thereafter, Ms. Donovan made reports to the NCUA and provided information to the NCUA regarding possible violations of bylaws, law and/or regulations by John Szoka and/or Bragg Mutual.

81. As a result of her reports to the NCUA and her provision of information to the NCUA, Bragg Mutual and/or John Szoka discriminated against Ms. Donovan in the terms, conditions and privileges of her employment, including as alleged herein.

82. As a result of Defendants' unlawful discrimination and retaliation against her, Ms. Donovan has suffered, and continues to suffer, ongoing financial damage as well as severe emotional and other distress.

83. The above allegations establish that Bragg Mutual and/or John Szoka acted with malice and/or reckless indifference towards and disregard for Ms. Donovan's federally protected rights to be free from discrimination and retaliation because of her reports to the NCUA.

## SECOND CLAIM FOR RELIEF
### (Tortious Interference With Contract)

84. The allegations in paragraphs 1 through 83 are hereby incorporated by reference.

85. Mr. Szoka used his position with Bragg Mutual to have adverse employment

actions taken against Ms. Donovan, as alleged herein.

86. Mr. Szoka acted solely for his own personal interests, and not in the interests of Bragg Mutual, in using his position with Bragg Mutual to have adverse employment actions taken against Ms. Donovan.

87. Ms. Donovan was validly and otherwise employed by Bragg Mutual as President/CEO and otherwise had an employment contract with Bragg Mutual. Mr. Szoka was aware of this fact.

88. Mr. Szoka intended to induce Bragg Mutual to wrongfully terminate Ms. Donovan.

89. Mr. Szoka acted maliciously (including with legal malice), without any justification, and for the purpose of having Bragg Mutual take unlawful adverse employment actions against Ms. Donovan.

90. Bragg Mutual took unlawful adverse employment actions against Ms. Donovan.

91. Mr. Szoka's actions were the cause of Bragg Mutual's unlawful adverse employment actions against Ms. Donovan.

92. Ms. Donovan has suffered damages as a result.

### THIRD CLAIM FOR RELIEF
**(Wrongful Discharge In Violation Of North Carolina Public Policy)**

93. The allegations in paragraphs 1 through 92 are hereby incorporated by reference.

94. At all relevant times, Ms. Donovan was a female more than forty (40) years of age, engaged in protected conduct and was otherwise within the class of persons protected by N.C. Gen. Stat. § 143-422.2.

95. Bragg Mutual took actions against Ms. Donovan that resulted in adverse employment actions, including as alleged herein.

16
Case 5:18-cv-00148-FL   Document 16   Filed 05/25/18   Page 16 of 19

96. Ms. Donovan performed her job duties in a satisfactory manner at all relevant times.

97. Ms. Donovan's sex, age and/or protected activity were determinative factors in Bragg Mutual's decision to take such adverse employment actions against her. As a result of Bragg Mutual's unlawful employment actions, Ms. Donovan has incurred damages and is entitled to compensatory damages, front pay and other forms of relief.

98. It is the public policy of the State of North Carolina to protect and safeguard the right and opportunity of all persons who hold employment without discrimination based on sex, age and/or protected conduct, as manifested in N.C. Gen. Stat. § 143-422.2.

99. Bragg Mutual's adverse employment actions against Ms. Donovan because of her sex, age and/or protected activity is a violation of the public policy of the State of North Carolina, and Ms. Donovan has suffered substantial damages as a result.

100. The conduct, acts and omissions of Bragg Mutual constitute malicious, willful and wanton conduct or are in reckless disregard and indifference to Ms. Donovan's rights.

## FOURTH CLAIM FOR RELIEF
(Civil Conspiracy)

101. The allegations in paragraphs 1 through 100 are hereby incorporated by reference.

102. With respect to the allegations contained herein, Mr. Szoka acted for his own individual/personal interests (including but not limited to unfairly trying to take credit for Bragg Mutual's successful operations during Ms. Donovan's tenure so that he could gain favor with his political constituents), and not in any official/corporate capacity to Bragg Mutual. These individual/personal interests were wholly separable from Bragg Mutual's interests.

103. With respect to the allegations contained herein, Mr. Szoka acted without authorization from Bragg Mutual.

104. Mr. Szoka and Bragg Mutual, together, agreed and conspired to commit fraud and other unlawful conduct alleged herein against Ms. Donovan.

105. As a result of Mr. Szoka's and Bragg Mutual's actions, Ms. Donovan suffered damages.

## FIFTH CLAIM FOR RELIEF
**(Punitive Damages)**

106. The allegations in paragraphs 1 through 105 are hereby incorporated by reference.

107. The actions of Mr. Szoka and/or Bragg Mutual as set forth above were willful, wanton and malicious.

108. As a direct, foreseeable and proximate results of Mr. Szoka's and/or Bragg Mutual's willful, wanton and malicious conduct, Ms. Donovan has suffered substantial damages.

WHEREFORE, Ms. Donovan respectfully requests the following relief:

a. Judgment against all Defendants, jointly and severally, for compensatory damages plus interest as allowed by law and to be more particularly determined at trial;

b. Judgment against all Defendants, jointly and severally, for punitive damages plus interest as allowed by law and to be more particularly determined at trial;

c. That she recover from Defendants, jointly and severally, the reasonable costs of attorneys' fees incurred in the prosecution of this action, plus interest as allowed by law;

d. That all costs of this action be taxed against Defendants;

e. That all issues in this case be tried by a jury; and

f. For such other and further relief that the Court deems appropriate.

Respectfully submitted this 25th day of May, 2018.

**THE NOBLE LAW FIRM, PLLC**

*/s/ Nicholas J. Sanservino, Jr.*
Nicholas J. Sanservino, Jr. (N.C. Bar No. 36557)
Laura L. Noble, Esq. (N.C. Bar No. 38691)
141 Providence Road, Suite 210
Chapel Hill, N.C. 27514
Telephone: (919) 251-6008
Facsimile: (919) 869-2079
nick@thenoblelaw.com
lnoble@thenoblelaw.com
*Attorneys for Plaintiff*