IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:18-cv-00148-FL

| | | |
|---|---|---|
| BETTY EILEEN DONOVAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | MEMORANDUM OF LAW IN SUPPORT |
| v. | ) | OF DEFENDANTS' MOTION TO |
| | ) | DISMISS FIRST AMENDED |
| | ) | COMPLAINT |
| BRAGG MUTUAL FEDERAL CREDIT | ) | |
| UNION and JOHN SZOKA, individually, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

Now come Defendants Bragg Mutual Federal Credit Union ("Defendant Bragg Mutual") and John Szoka ("Defendant Szoka") (collectively, "Defendants"), by and through counsel of record, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.1, hereby submit the following memorandum of law in support of their motion for an Order dismissing Plaintiffs' First Amended Complaint.

Plaintiff's claims against the Defendants fail as a matter of law for the following reasons outlined herein:

-- Plaintiff cannot maintain a claim for wrongful discharge in violation of public policy pursuant to N.C. Gen. Stat. § 143-422.2 based on allegations of retaliation as North Carolina does not have a public policy regarding retaliation for opposing discrimination and as Plaintiff has failed to state a claim for gender or age discrimination in the form of harassment because the conduct Plaintiff describes was neither sufficiently severe nor pervasive to create a hostile work environment.

--      Plaintiff cannot maintain her claim against the Defendants as a whistleblower pursuant to 12 U.S.C. § 1790b as she has failed to establish a prima facie case under this federal anti-retaliation statute.

--      Plaintiff cannot maintain her claim against Defendant Szoka for tortious interference with contract as she has failed to allege that she has a valid contract with a third person which confers upon the plaintiff a contractual right against a third person, that Defendant Szoka induced the third person not to perform the contract without justification, and that Defendant Szoka's actions resulted in actual damage to Plaintiff.

--      Plaintiff cannot maintain her claim against the Defendants for civil conspiracy as the Complaint fails to allege any overt, tortious, or unlawful act which either Defendant committed in furtherance of the alleged conspiracy and this claim is further barred by the intracorporate conspiracy doctrine.

--      Plaintiff cannot maintain her claim against the Defendants for punitive damages as she has not demonstrated that the Defendants have committed any wrongful act willfully or under circumstances of rudeness, oppression or in a manner which evidences a reckless and wanton disregard of Plaintiff's rights.

## PROCEDURAL BACKGROUND

Plaintiff filed this action on April 9, 2018 against Defendants in which she purported to allege a claim against Defendant Bragg Mutual for wrongful discharge in violation of North Carolina public policy, claims against both Defendants for relief pursuant to the Federal Credit Union Act as a whistleblower, civil conspiracy, and punitive damages, and a claim against Defendant Szoka for tortious interference with contract. Defendants filed a motion to dismiss the initial Complaint on

May 4, 2018.  Plaintiff filed her First Amended Complaint on May 25, 2018, thereby mooting Defendants' motion to dismiss the initial Complaint.  Defendants filed an Answer and Affirmative Defenses to the First Amended Complaint on June 8, 2018 and contemporaneously therewith, filed a Motion to Dismiss the First Amended Complaint as the allegations contained therein do not serve to cure the factual and legal deficiencies contained in the Initial Complaint.

## STATEMENT OF FACTS[1]

Plaintiff's factual allegations can be summarized as follows.  Plaintiff alleges that she was a long-standing employee of Defendant Bragg Mutual who was appointed as its President/CEO in November of 2015.  *First Amended Complaint, ¶¶ 1, 22, 23.*  Despite what she claims was an impressive record of job performance *[First Amended Complaint, ¶ 25]*, and her claim that she was "beloved by Bragg Mutual's members and its employees" *[First Amended Complaint, ¶ 26]*, Plaintiff alleges that Defendant Szoka, the Chairman of Defendant Bragg Mutual's Board of Directors, displayed personal animus toward Plaintiff, that he "commonly yelled, cursed at and otherwise belittled [Plaintiff] in front of other Board members without justification" *[First Amended Complaint, ¶ 34],* providing an example in which he accused Plaintiff of lying to the Board in an October 2017 Board meeting and uttered profanities in his demand that she "better never lie to this Board again" *[First Amended Complaint, ¶ 35],* and that on multiple unspecified occasions and as recently as late 2017, advised Plaintiff that "due to her age, he believed she was 'antiquated' and was incapable of bringing 'fresh ideas' to Bragg Mutual."  *First Amended Complaint, ¶¶ 28, 29.*

---

[1] **For purposes of this Motion to Dismiss only, the factual allegations contained in the Complaint are assumed to be true.**

3

Defendant Szoka allegedly "completely dominated the operations and decision-making of the Board and/or has otherwise caused the Board to make decisions based solely upon Mr. Szoka's personal interests wholly separarable from Bragg Mutual and regardless of whether such interests were contrary to the interests of Bragg Mutual and/or its membership." *First Amended Complaint, ¶ 21.* Plaintiff alleges that Defendant Szoka secretly communicated with Board member Jennifer Cooney before, during and after Board meetings to discuss Defendant Szoka's "personal agenda for undermining [Plaintiff's] authority and otherwise poisoning [Plaintiff] with the rest of the Board." *First Amended Complaint, ¶ 38.*

Plaintiff further alleges that Defendant Bragg Mutual's Vice-President of Lending/Marketing Director William Drewry received a bonus payment during an unspecified time frame which was allegedly contrary to Defendant Bragg Mutual's bylaws, the FCUA and/or its regulations *[First Amended Complaint, ¶ 40]* and that, upon information and belief, Mr. Drewry secretly recorded conversations between himself and Plaintiff and played the recordings for at least one Board member. *First Amended Complaint, ¶ 39.* When Plaintiff terminated Mr. Drewry's employment in part as a result of his alleged failure to timely comply with a "Document of Resolution" issued by the National Credit Union Administration, Defendant Szoka rescinded the termination and reinstated Mr. Drewry to his position allegedly without any legitimate justification. *First Amended Complaint, ¶¶ 41-42.*

It is notable that while Plaintiff repeatedly states that Defendant Szoka displayed personal animus against Plaintiff with no explanation for the basis of the alleged animus, other than the above statements and a parenthetical "(including based upon her age, gender and/or protected activity)" *[First Amended Complaint, ¶ 28]* and Plaintiff's conclusory statement that "Szoka and/or Bragg

Mutual had other plans for [Plaintiff] notwithstanding her overwhelmingly positive job performance" *[First Amended Complaint, ¶ 26]*, Plaintiff provides no factual support for her claims that Defendant Szoka's remarks or actions were made or undertaken on the basis of her age or gender or on the basis of any protected activity.

Plaintiff further alleges that during her tenure she reported Defendant Szoka's conduct and animus to management, including the Supervisory Committee for Defendant Bragg Mutual, and to unspecified representatives of the National Credit Union Administration, but that Defendant Bragg Mutual refused to investigate or remedy Defendant Szoka's alleged misconduct and instead condoned it. *First Amended Complaint, ¶¶ 45, 54.*

Plaintiff alleges that on February 15, 2018, the Board met for two hours in what it called a closed session and that she was thereafter advised that her duties would thereafter be suspended as the Board "no longer trusted her judgment." *First Amended Complaint, ¶¶ 46-47.* Plaintiff alleges that the Board of Defendant Bragg Mutual has "provided her with no opportunity to correct any purported and pretextual deficiencies." *First Amended Complaint, ¶ 20.* At Defendant Bragg Mutual's annual membership meeting on March 13, 2018, Plaintiff alleges that the membership of Defendant Bragg Mutual was not advised of Plaintiff's status and in response to questions from members at the meeting, Defendant Szoka and Defendant Bragg Mutual's outside counsel stated that Plaintiff's "matter was 'a personnel matter that the Board has taken' and that they were not 'at liberty' to discuss it with the membership." *First Amended Complaint, ¶¶ 56, 59, 60.* Plaintiff further alleges that her subsequent requests that the Supervisory Committee for Defendant Bragg Mutual schedule a membership meeting to address this matter have not been complied with. *First Amended Complaint, ¶ 62-63.* Plaintiff alleges that these actions violate the Defendants' stated goals

Case 5:18-cv-00148-FL   Document 21   Filed 06/08/18   Page 5 of 30

and principles as reflected in Defendant Bragg Mutual's website and on Defendant Szoka's website as a member of the North Carolina General Assembly. *First Amended Complaint,* *¶¶ 2, 4.*

## ARGUMENT

## I.    STANDARD OF REVIEW

In analyzing a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, this court must determine whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007); *Coleman v. Md. Ct. of Appeals,* 626 F.3d 187 (4th Cir. 2010); *Giarratano v. Johnson,* 521 F.3d 298 (4th Cir. 2008); *Goodman v. Praxair, Inc.,* 494 F.3d 458 (4th Cir. 2007) (en banc); *Kloth v. Microsoft Corp.,* 444 F.3d 312 (4th Cir. 2006); *accord Erickson v. Pardus,* 551 U.S. 89 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. *Iqbal,* 129 S. Ct. at 1949-50; *Coleman,* 626 F.3d at 190; *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250 (4th Cir. 2009). Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano,* 521 F.3d at 302; *see Iqbal,* 129 S. Ct. at 1949-50. The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Fed. R. Civ. P. 8(a)(2) "requires a 'showing', rather than a blanket assertion, of entitlement to relief." *Twombly,* 550 U.S. at 556 n. 3, *Francis v. Giacomelli,* 588 F.3d 186 (4th Cir. 2009).

To withstand a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Iqbal,* 129 S. Ct. at 1949-50, quoting *Twombly,* 550 U.S. at 570). This plausibility standard is "not akin to a 'probability requirement', but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.; accord Twombly,* 550 U.S. at 570

**6**

(emphasizing that a pleading providing "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal citation omitted). A motion to dismiss "allows a court to eliminate actions that are fatally flawed in their legal premises." *Parham v. Pepsico, Inc.,* 927 F. Supp. 177, 178 (E.D.N.C. 1995).

## II.   PLAINTIFF CANNOT MAINTAIN HER CLAIM FOR WRONGFUL DISCHARGE IN VIOLATION OF NORTH CAROLINA PUBLIC POLICY

Nowhere in Plaintiff's Complaint does she assert that she had a contractual relationship for a specific term with Defendant Bragg Mutual, other than her conclusory, unsubstantiated statement that she was "validly and otherwise employed by Bragg Mutual as President/CEO and otherwise had an employment contract with Bragg Mutual" *[First Amended Complaint, ¶ 87],* that she had "dedicated her professional life to Bragg Mutual" for "over thirty years" *[First Amended Complaint, ¶ 22],* and that "Bragg Mutual appointed Ms. Donovan as its President/CEO in November 2015." *First Amended Complaint, ¶ 23.* As such, Plaintiff is employed at will.

In North Carolina, an exception to the at-will employment doctrine exists in scenarios in which it is established that an employee is discharged for an unlawful reason or purpose that contravenes public policy. *Hogan v. Forsyth Country Club Co.,* 79 N.C. App. 483, 340 S.E.2d 116 (1986). A claim for wrongful termination arising under this public policy exception requires a plaintiff to allege that she was discharged from her employment in retaliation for (1) her refusal to perform an act prohibited by law or (2) her performance of an act required by law. *Id.* The public policy exception to at-will employment should be narrowly construed. *Williams v. Hillhaven Corp.,* 91 N.C. App. 35, 370 S.E.2d 423 (1988).

In this case, Plaintiff has not alleged that Defendant Bragg Mutual affirmatively demanded that she violate public policy or that she was discharged from employment for performing a legally required act. Even if this Court determines that public policy demands that Plaintiff be required to report incidents such as those of which she has complained, Plaintiff has failed to do anything more than provide conclusory assertions that such reports in fact occurred, that Defendants were aware of such reports prior to the suspension of her employment, that such suspension in fact constituted a discharge of her employment, or that there was a causal connection between Defendants' adverse employment actions and her alleged reports. Plaintiff has failed to allege facts to support an inference that she would not have been suspended from employment had she not complained of Defendants' alleged conduct and her claim for wrongful discharge in violation of public policy should therefore be dismissed.

A. **North Carolina does not have a public policy regarding retaliation for opposing discrimination.**

In her Complaint, Plaintiff cites to the North Carolina Equal Employment Practices Act ("NCEEPA") as the public policy supporting her claim against Defendant Bragg Mutual for wrongful discharge in violation of public policy. NCEEPA, which is codified at N.C. Gen. Stat. § 143-422.1 *et seq.,* provides in pertinent part as follows:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, biological sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143-422.2.

The NCEEPA does not address individual supervisor liability, nor does it provide a private right of action. *Percell v. IBM, Inc.,* 765 F.Supp. 297 (E.D.N.C. 1991, *aff'd,* 23 F.3d 402 (4th Cir.

1994); *Cox v. Indian Head Indus.,* 187 F.R.D. 531 (W.D.N.C. 1999). It may only be used as the basis of a claim for wrongful discharge in violation of public policy. In order to assert a claim of employment discrimination or retaliation, an employee must first file a claim with the Equal Employment Opportunity Commission, which may then forward the charge to the North Carolina Human Relations Commission to thereafter investigate. In a discriminatory discharge case in which a plaintiff also has an adequate remedy in Title VII, a cause of action based on the public policy exception outlined in NCEEPA should be dismissed. *Frazier v. First Union Nat'l Bank,* 747 F. Supp. 1540 (W.D.N.C. 1990). While Plaintiff did, in fact, file a charge with the Equal Employment Opportunity Commission subsequent to the filing of Defendants' Motion to Dismiss her initial Complaint, until the charge has been resolved, she has failed to undertake the necessary administrative steps to assert a claim for discrimination or for retaliation.

Assuming, without conceding, that Defendants' actions could be construed as a discharge, Plaintiff's allegations do not support her claim that the discharge of her employment was in violation of public policy. North Carolina courts have repeatedly rejected attempts by plaintiffs to bring wrongful discharge claims under Section 143-422.2 based on allegations of retaliation. *See, e.g., Johnson v. North Carolina,* 905 F.Supp.2d 712, 725 (W.D.N.C. 2012) (collecting cases); *Lowe v. Unifi, Inc.,* 282 F.Supp.2d 773, 790-91 (M.D.N.C. 2003) (noting that "North Carolina does not recognize tort claims under the NCEEPA for . . . wrongful discharge in retaliation for complaints of sexual harassment.").

"While North Carolina has an express public policy against sexual discrimination, including sexual harassment, North Carolina does not have a public policy regarding retaliation for opposing sexual discrimination." *Wilkes v. Argueta,* 2017 U.S. Dist. LEXIS 49964 (M.D.N.C. Mar. 31, 2017).

In facts, courts addressing this issue have specifically held that "North Carolina has no written public policy . . . with respect to retaliation for opposing sexual discrimination in the workplace." *Efird v. Riley,* 342 F. Supp. 2d 413, 428 (M.D.N.C. 2004). *See, e.g., Mullis v. Mechs. & Farmers Bank,* 994 F. Supp. 680, 688 (M.D.N.C. 1997) (ruling that "[p]laintiff's claim for wrongful discharge in violation of public policy must fail because there is no North Carolina state law support for [p]laintiff's assertion that a retaliatory discharge arising from complaints of sexual harassment violates the public policy of North Carolina"); *Leach v. N. Telecom, Inc.,* 141 F.R.D. 420, 426 (E.D.N.C. 1991) (dismissing plaintiff's claim for wrongful discharge in violation of public policy because "[N.C. Gen. Stat. § 143.422.2] does not express a public policy concerning retaliation for opposition to discriminatory practices).

In this action, Plaintiff's claim for wrongful discharge in violation of public policy must fail because, as repeatedly stated by North Carolina courts, there is no legal support for Plaintiff's assertion that a retaliatory discharge arising from complaints of harassment (for age, sex, or any unspecified protected activity) violates the public policy of North Carolina. Simply put, NCEEPA does not express any public policy concerning retaliation for opposition to any form of discriminatory practice. Given the foregoing authorities, Plaintiff's claim for wrongful discharge based on violation of a public policy against retaliation for opposing discriminatory behavior must be dismissed.

**B.**     **Plaintiff has failed to state a claim for harassment because the conduct Plaintiff describes was neither sufficiently severe nor pervasive to create a hostile work environment.**

In her First Amended Complaint, Plaintiff still has not stated with any degree of specificity what she believes was the basis for Defendant Szoka's alleged animus toward her or what she did

in response that constitutes legally protected activity. She states only that Defendant Bragg Mutual's "adverse employment actions" were "because of her sex, age, and/or protected activity." With the exception of one statement that was allegedly uttered by Defendant Szoka in "late 2017" that her ideas were "antiquated," which Plaintiff apparently construed as a commentary about her age, Plaintiff has provided absolutely no facts or details of any alleged actions or behavior which were directed at her gender or age. She has not stated with any degree of specificity what she did that arguably constitutes legally protected activity, and the First Amended Complaint contains only conclusory allegations that the Defendant Bragg Federal's unspecified adverse employment actions were on the basis of any protected status or activity.

In evaluating claims for employment discrimination and retaliation, North Carolina courts utilize federal law governing claims asserted under Title VII. *North Carolina Dep't of Cor. v. Gibson,* 58 N.C. App. 241, 293 S.E.2d 664 (1982), *rev'd on other grounds,* 308 N.C. 131, 301 S.E.2d 78 (1982); *Settle v. Elixir Indus.,* 2003 U.S. Dist. LEXIS 22296 (M.D.N.C. Dec. 3, 2003). In order to state a hostile work environment claim for harassment under Title VII, a plaintiff "must allege that (1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). Further, a plaintiff must first exhaust her administrative remedies by filing a charge with the Equal Employment Opportunity Commission within 180 days of each discrete adverse employment action described in the complaint and thereafter permitting the EEOC to investigate the charge and make

a determination as to its merit. *Barcliff v. N.C. League of Municipalities, 2011 U.S. Dist. LEXIS 7116 (E.D.N.C. 2011); Williams v. Giant Food Inc., 370 F.3d 423 (4ᵗʰ Cir. 2004).*

A plaintiff must clear a high bar in order to state a claim for harassment. Conduct that is "merely offensive" is not actionable, nor is "mere utterance of an epithet which engenders offensive feelings in an employee." *Harris v. Forklift Sys.,* 51 U.S. 17, 21 (1993). The Supreme Court has noted that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive environment – an environment that a reasonable person would find hostile or abuseive – is beyond Title VII's purview." *Id.* Factors that a court should consider when determining whether harassment is actionable under Title VII include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. Furthermore, abusive treatment must be both subjectively and objectively "severe or pervasive" to state a claim under Title VII. *Mixon v. Charlotte-Mecklenburg Sch.,* 2011 U.S. Dist. LEXIS 124291 (W.D.N.C. Aug. 5, 2011). In granting the employer's motion to dismiss the *Mixon* plaintiff's harassment claim, the court noted that "it is insufficient to merely plead facts establishing callous behavior by one's superiors," because "Title VII does not set forth a general civility code for the American workplace." *Id.* at * 12.

Plaintiff's Complaint fails to state a claim for discrimination as it includes only conclusory allegations that fail to connect any adverse employment action to her gender or age. Unless a plaintiff offers direct evidence of discrimination, "the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees

outside the protected class." *Coleman v. Md. Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010). A plaintiff must include some factual allegations which allow a court to conclude that her treatment was based on a protected status. In *McCleary-Evans v. Md. DOT,* 780 F.3d 582 (4th Cir. 2014), the plaintiff alleged that the DOT refused to hire her because of her race and sex, stating that she was qualified for the positions she sought, but that the hiring parties selected "non-Black candidates" and overlooked African-American candidates. The plaintiff did not include any allegations regarding the suitability of the persons who were ultimately hired for the positions. *Id.* at 584.

The *McCleary-Evans* court noted that conclusory allegations that merely recite the elements of a claim do not meet the plausibility standard for pleading a Title VII case. *Id.* at 585. Although the plaintiff in *McCleary-Evans* alleged that the DOT did not select her because of racial bias on the part of the decisionmakers, she failed to allege any facts sufficient to show that the reason she was not hired was because of her race or sex. *Id.* Her allegations of bias on the part of the decisionmakers was merely conclusory. The court could only speculate as to the reason for their hiring decision. "While the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is *consistent* with discrimination, it does not alone support *a reasonable inference* that decisionmakers were motivated by bias." *Id.* The court, in ultimately dismissing the complaint, concluded that the complaint "leaves open to speculation the cause for the defendant's decision to select someone other than her, and the cause that she asks us to infer (i.e, invidious discrimination) is not plausible in light of the 'obvious alternative explanation' that the decisionmakers simply judged those hired to be more qualified and better suited for the positions." *Id.* at 588.

In *Mixon,* a magistrate recommended dismissal of a former employee's Title VII discrimination and harassment complaint because the plaintiff alleged no facts showing that the alleged discrimination was due to the employee's race or that the alleged harassment was sufficiently severe and pervasive to violate Title VII. The plaintiff had alleged a laundry list of generalized workplace grievances about comments and incidents that the court determined had nothing to do with her race, concluding "[t]his is not the type of conduct that Title VII was intended to cover" and that "[t]he mere fact that Plaintiff subjectively believes she was terminated from employment due to racial bias does not make it so." *Id.* at 124293; *see also EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (emphasizing that "complaints premised on nothing more than rude treatment by coworkers, . . . callous behavior by one's supervisor . . . or a routine difference of opinion and personality conflict with one's supervisor" are not actionable).

In this case, Plaintiff describes Board meetings in which she was allegedly treated with a lack of respect by the Board Chairman, Defendant Szoka. She alleges that decisions about her status were made by the Board without her input and without explanation. She alleges that her status was discussed among some of the members of the Board and that a conversation she had with a credit union employee and officer was recorded without her knowledge. She alleges that one of her decisions about the status of another officer was overruled by Defendant Szoka. She alleges that her position was terminated by the Board of Directors with limited explanation as to the cause of the termination. She alleges that Defendant Szoka possessed personal animus toward her and acted for his own individual benefit in his interactions with her, but Plaintiff does not provide anything more than conclusory statements as to the basis of that animus or how Defendant Szoka received any personal benefit as a result of his alleged actions. These allegations do not form the basis of a

plausible complaint because there are no factual allegations tying these actions and decisions to discrimination on the basis of a protected status. It is not sufficient to allege two elements of discrimination – membership in a protected class and an adverse employment action – without more, because a Title VII claim "requires showing a connection between [gender or age] and the adverse employment decision." *Autry v. North Carolina Dept. of Human Resources,* 820 F.2d 1384, 1385 (4th Cir. 1987). In the absence of any allegations that Plaintiff suffered differential treatment as the result of her gender or age, her discrimination claim necessarily fails.

The *Iqbal* standard requires more than a "sheer possibility" of discrimination in order to rise to the level of plausibility. Even assuming that Plaintiff's allegations are true, because she failed to connect her complaints with a gender or age motivation using facts, a lawful alternative explanation – that the Board had concerns about deficiencies in her performance as CEO and President of Defendant Bragg Mutual – appears more likely. Finding that Plaintiff's factual allegations indicate discrimination on the part of Defendant Bragg Mutual would require speculation as to the lack of business reasons for the treatment alleged. Therefore, Plaintiff's Complaint is not plausible on its face and should be dismissed.

Further, Plaintiff has failed to allege that any complaints she made implicated Title VII. "Title VII does not prohibit private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII." *Mixon, supra,* at * 15. The court in *Mixon* determined that the plaintiff's retaliation claim must fail because the plaintiff gave no indication that she put her employer on notice that racial discrimination or harassment was an issue. *Id.* at * 16. "Title VII requires that employees provide some kind of notice to their

employer that they are complaining about prohibited practices covered by the statute. Generalized complaints about disputes or annoyances in the workplace are insufficient." *Id.* at * 17.

Although Plaintiff broadly alleges that Defendant Szoka "regularly displayed an unlawful animus toward Ms. Donovan (including based upon her age, gender and/or protected activity) and otherwise attempted to undermine her authority based upon his unlawful animus and due to his own personal interests, to the detriment of Bragg Mutual and its membership" [*First Amended Complaint*, ¶ *28]* and "commonly yelled, cursed at and otherwise belittled Ms. Donovan in front of other Board members without justification" [*First Amended Complaint, ¶ 34],* her allegations are conclusory and fail to provide specificity with respect to any reports or complaints she made. The Complaint does not provide any specific instance of discrimination or retaliation that ties any of the conduct of Defendant Szoka or any other member of the Board to Plaintiff's age or gender. Workplace grievances that do not implicate gender, age, or any other protected status do not implicate Title VII. The "mere utterance of an . . . epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986). "Title VII is not a 'general civility code,'" and "[p]rofanity, while regrettable, is something of a fact of daily life." *Ziskie v. Mineta,* 547 F.3d 220, 228 (4th Cir. 2008), *quoting Oncale v. Sundower Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998).

Plaintiff is employed at will as she has no employment contract with Defendant Bragg Mutual. As such, in order to bring a wrongful discharge claim under the North Carolina public policy exception to the employment-at-will doctrine, "something more than a mere statutory violation is required. . . . An employer wrongfully discharges an at-will employee if the termination

Case 5:18-cv-00148-FL   Document 21   Filed 06/08/18   Page 16 of 30

is done for an unlawful reason or purpose that contravenes public policy." *Blakeley v. Town of Taylortown,* 756 S.E.2d 878, 886 (N.C. Ct. App. 2014), *quoting Garner v. Rentenbach Constructors, Inc.,* 350 N.C. 567, 571, 515 S.E.2d 438, 441 (1991). The NCEEPA does not assist a plaintiff in establishing a claim based on the public policy exception to North Carolina's general rule of at-will employment. *DeWitt v. Mecklenburg County,* 73 F. Supp. 2d 589 (W.D.N.C. 1999). Plaintiff has failed to identify any specified North Carolina public policy that was violated by the Defendants or any explicit violation of a specific statutory or constitutional provision arising from the actions alleged in the Complaint. For all of the foregoing reasons, Plaintiff's wrongful discharge claim on the basis of violation of North Carolina public policy should be dismissed.

### III. PLAINTIFF CANNOT MAINTAIN HER CLAIM AGAINST THE DEFENDANTS AS A WHISTLEBLOWER PURSUANT TO 12 U.S.C. § 1790b

Plaintiff asserts that she is entitled to compensatory damages from the Defendants as a whistleblower pursuant to 12 U.S.C. § 1790b on the basis that, during her employment, she "made reports to the NCUA and provided information to the NCUA regarding possible violations of law and/or regulations by John Szoka and/or Bragg Mutual" and that as a result of such reports and provision of information, the Defendants "discriminated against her in the terms, conditions and privilege of her employment." *[Complaint, ¶¶ 58, 59].*

12 U.S.C. § 1790b(a)(1) provides as follows:

No insured credit union may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to the Board or the Attorney General regarding any possible violation of any law or regulation by the credit union or any director, officer, or employee of the credit union.

In order to establish a prima facie case under this federal anti-retaliation statute, the plaintiff must show: (1) that she engaged in an activity protected by the statute; (2) the defendants subjected the claimant to some materially adverse employment action; and (3) a causal connection existed between the protected activity and the adverse action. *Simas v. First Citizens' Fed. Credit Union,* 170 F.3d 37, 1999 U.S. App. LEXIS 3219 (1st Circuit 1999). The protection afforded to employees under § 1790b is not available, however, if the employee has either (1) deliberately caused or participated in the alleged violation of law or regulation, or (2) knowingly or recklessly provided substantially false information to the Board or the Attorney General. *Garrett v. Langley Federal Credit Union,* 121 F. Supp. 2d 887, 2000 U.S. Dist. LEXIS 16987 (E.D. Va. 2000).

In her Complaint, Plaintiff provides no details regarding any reports that she made or information that she provided to the NCUA regarding any violations of law by the Defendants, nor does she describe the alleged violations of any law and/or regulations which the Defendants allegedly violated, other than generalized allegations that the Board did not comply with its bylaws, with 12 C.F.R. 701.4, or with the *Credit Union Board of Directors Handbook*, a publication issued by the Credit Union National Association. *[First Amended Complaint, ¶ 32]*. Handbooks issued by the National Credit Union Association "convey information and provide clarifications to credit union officials and management, although they [do not] have the force and effect of a regulation." *See, e.g., Supervisory Committee Guide for Federal Credit Unions, Section 1.01.* This Handbook does not constitute either a law or a regulation, but rather provides guidelines for Board members to follow in performing their duties.

Pursuant to 12 C.F.R. § 701, which regulates the organization and operation of Federal credit unions, such entities are required to operate in accordance with their bylaws. 12 C.F.R. § 701.2.

Case 5:18-cv-00148-FL   Document 21   Filed 06/08/18   Page 18 of 30

The board of directors is responsible for the general direction and control of the affairs of the Federal credit union and each director has the duty to carry out his or her duties as a director in good faith, in a manner such director reasonably believes to be in the best interests of the membership of the Federal credit union as a whole, and with the care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances. 12 C.F.R. §§ 701.4(a), (b)(1). Each director further has the duty to direct management's operations of the Federal credit union in conformity with the requirements set forth in the Federal Credit Union Act, Chapter 701 of the Code of Federal Regulations, other applicable law, and sound business practices. 12 C.F.R. § 701.4(b)(4). In carrying out its duties, the board of directors has the authority to retain staff and outside counsel who report to the board and who serve at its pleasure. 12 C.F.R. § 701.4(c).

Plaintiff makes the conclusory statement that "Bragg Mutual's Board does not comply with a number of other duties and instructions mandated by the Handbook, Bragg Mutual's bylaws and/or the FCUA, including as it relates to maintaining appropriate corporate records." *First Amended Complaint, ¶ 19.* Other than an alleged failure to maintain complete and accurate minutes of Board meetings and the Board's alleged unlawful discrimination and retaliation against Plaintiff *[First Amended Complaint, ¶ 32]*, Plaintiff's Complaint does not allege that Defendant Bragg Mutual took any action in derogation of its bylaws. She makes only conclusory allegations that she reported to the NCUA any specific violation of the Federal Credit Union Act or any specific regulation interpreting said Act, that she advised any specific member of the Board, anyone associated with Defendant Bragg Mutual, or Defendant Szoka that she had made such a report of a violation of any law or regulation or provided any such information to the NCUA during her employment, or that any action undertaken by the Board was in direct response to such a report or such information.

19

As previously discussed, the *Iqbal* standard requires more than a "sheer possibility" of discrimination in order to rise to the level of plausibility. Plaintiff's allegations are nothing more than a "formalistic recitation of the elements" of the cause of action. *See, e.g., Iqbal,* 129 S. Ct. at 1949; *Twombly,* 550 U.S. at 555; *Coleman,* 626 F.3d at 190. Statutory retaliation claims, such as that outlined in 12 U.S.C. § 1790b(a)(1), require that employees provide some kind of notice to their employer that they are complaining about prohibited practices covered by the statute. *Mixon, supra; see also Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653 (4th Cir. 1998) (holding that plaintiff failed to establish a retaliation claim because decisionmaker was unaware of protected activity); *Monk v. Potter,* 723 F.Supp.2d 860 (E.D. Va. 2010) (holding that complaints about supervisor's management style were not protected activity for purpose of retaliation claim since there was no allegation of unlawful discrimination).

Even assuming that Plaintiff's allegations are true, because she failed to connect her alleged reports to the National Credit Union Agency to any adverse employment actions undertaken by the Defendants, a lawful alternative explanation for the Defendants' actions – that the Board had concerns about deficiencies in her performance as CEO and President of Defendant Bragg Mutual – appears more likely. Finding that Plaintiff's factual allegations indicate discrimination on the part of Defendant Bragg Mutual would require speculation as to the lack of business reasons for the treatment alleged. Therefore, Plaintiff's whistleblower claim is not plausible on its face and should be dismissed.

Case 5:18-cv-00148-FL   Document 21   Filed 06/08/18   Page 20 of 30

## IV. PLAINTIFF CANNOT MAINTAIN HER CLAIM AGAINST DEFENDANT SZOKA FOR TORTIOUS INTERFERENCE WITH CONTRACT

A claim for tortious interference with contract exists where the defendant knows of a contractual relationship between two parties and without justification induces one party to breach the contract. *United Laboratories, Inc. v. Kuykendall,* 322 N.C. 643, 370 S.E.2d 375 (1988). The five elements of tortious interference with contract, as established by the *Kuykendall* court, are (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff. *Id.* at 661, 370 S.E.3d at 387.

Under North Carolina law, employment is at-will. *Kurtzman v. Applied Analytical Indus., Inc.,* 347 N.C. 329, 493 S.E.2d 420 (1997). Unless the employer and employee have entered into a contract specifying a definite term of employment, the employment relationship "is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Id.* at 331, 493 S.E.2d at 422; *see also Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 2003 U.S. Dist. LEXIS 14884.

As discussed above in Section II(A), Plaintiff has failed to assert that she had a contractual relationship for a specific term with Defendant Bragg Mutual, other than her conclusory, unsubstantiated statement that she was "validly and otherwise employed by Bragg Mutual as President/CEO and otherwise had an employment contract with Bragg Mutual" and that "Mr. Szoka was aware of this fact," *[First Amended Complaint, ¶ 87],* that she had "dedicated her professional life to Bragg Mutual" for "over thirty years" *[First Amended Complaint, ¶ 22],* and that "Bragg

Mutual appointed Ms. Donovan as its President/CEO in November 2015." *First Amended Complaint, ¶ 23.* Plaintiff's complaint fails to identify any specific contract with Defendant Bragg Mutual that Defendant Bragg Mutual has been induced not to perform as a result of Defendant Szoka's conduct, nor has she demonstrated that she suffered actual damages as a result of the suspension of her employment with pay. As such, Plaintiff is employed at will and without the existence of a contract with Defendant Bragg Mutual, she cannot maintain an action for tortious interference with contract.

Assuming that this Court determines that an employment contract was, in fact, created between Plaintiff and Defendant Bragg Mutual that was terminable at will, Defendants concede that a plaintiff may maintain a claim for tortious interference with such a contract unless it is established that the defendant is justified in interfering with a contract. Such a scenario exists if the defendant does so "for a reason reasonably related to a legitimate business interests." *Robinson, Bradshaw & Hinson, P.A. v. Smith,* 129 N.C. App. 305, 498 S.E.2d 841, *disc. rev. denied,* 348 N.C. 695, 511 S.E.2d 650 (1998). Whether a defendant is justified in interfering with a plaintiff's contract depends upon "the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor[,] and the contractual interests of the other party." *Robinson, Bradshaw & Hinson, P.A.,* 129 N.C. App. at 317-18, 498 S.E.2d at 850, *quoting Peoples Security Life Ins. Co. v. Hooks,* 322 N.C. 216, 221, 367 S.E.2d 647, 650, reh'g denied, 322 N.C. 486, 370 S.E.2d 227 (1988).

As a general rule, "'non-outsiders' [to the contract] often enjoy qualified immunity from liability for inducing their corporation or other entity to breach its contract with an employee." *Lenzer v. Flaherty,* 106 N.C. App. 496, 513, 418 S.E.2d 276, 286, *disc. rev. denied,* 322 N.C. 345,

**22**

421 S.E.2d 348 (1992). In order to hold a "non-outsider" liable for tortious interference with contract, a plaintiff must establish that the defendant acted with legal malice, that he "does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." *Robinson, Bradshaw & Hinson, P.A.* at 318, 498 S.E.2d at 851, *quoting Varner v. Bryan,* 113 N.C. App. 697, 702, 440 S.E.2d 295, 298 (1994). "The plaintiff's evidence must show that the defendant acted without any legal justification for his action." *Varner* at 702, 440 S.E.2d at 298.

In *Varner*, the plaintiff was the former town manager of Knightdale, North Carolina. The plaintiff brought suit for tortious interference with contract against three town council members who sought his resignation. Plaintiff's evidence tended to show that the defendants' dissatisfaction with his performance was personal in nature, having to do with plaintiff's opinion that two of the town council members were violating certain town ordinances in connection with their businesses or that their actions were politically motivated. In upholding the trial court's grant of summary judgment for the defendants, the *Varner* court determined that the plaintiff failed to present evidence establishing that the defendants, as non-outsiders to the town manager's contract with the Town of Knightdale, acted with legal malice. The *Varner* court noted that the plaintiff served at the pleasure of the town council and that the defendant town council members had authority to discharge the plaintiff. As such, "even if plaintiff was terminated by defendants for personal or political reasons, as his evidence tends to show, such termination was neither a wrongful act nor one in excess of defendants' authority and therefore not legally malicious."

As in the *Varner* case, Plaintiff has no employment contract with Defendant Bragg Mutual and serves at the pleasure of the Board of Directors of Defendant Bragg Mutual. Plaintiff asserts that

for unspecified reasons, Defendant Szoka "regularly displayed an unlawful animus toward Ms. Donovan" and "attempted to undermine her authority based upon his unlawful animus and due to his own personal interests" and acted "solely for his own personal interests, and not in the interests of Bragg Mutual, in using his position with Bragg Mutual to have adverse employment actions taken against Ms. Donovan." *[First Amended Complaint, ¶¶ 28, 86]*. Plaintiff provides no factual basis for her assertion that Defendant Szoka's alleged adverse employment actions against Plaintiff were not undertaken in his capacity as Chairman of the Board of Directors of Defendant Bragg Mutual, but rather were undertaken "solely for his own personal interests," nor has she alleged any facts which might demonstrate what those personal interests might have been that would be inconsistent with his duties as Chairman of the Board of Directors of Defendant Bragg Mutual or which might demonstrate that Defendant Szoka breached any specific contractual obligation to Plaintiff undertaken by Defendant Bragg Mutual. For the foregoing reasons, Plaintiff's claim against Defendant Szoka for tortious interference with contract must fail and should be dismissed.

## V. PLAINTIFF CANNOT MAINTAIN HER CLAIM AGAINST THE DEFENDANTS FOR CIVIL CONSPIRACY

In her claim for relief on the basis of civil conspiracy, Plaintiff contends that Defendant Szoka "acted for his own individual/personal interests (including but not limited to unfairly trying to take credit for Bragg Mutual's successful operations during Ms. Donovan's tenure so that he could gain favor with his political constituents), and not in any official/corporate capacity to Bragg Mutual" *[First Amended Complaint, ¶ 102]* and that the Defendants "together, agreed and conspired to commit fraud and other unlawful conduct alleged herein against Ms. Donovan." *[First Amended Complaint, ¶ 104]*. In support of this claim, Plaintiff further contends that Defendant Szoka secretly

Case 5:18-cv-00148-FL   Document 21   Filed 06/08/18   Page 24 of 30

communicated with at least one Board member before, during and after Board meetings "to discuss his personal agenda for undermining Ms. Donovan's authority and otherwise poisoning Ms. Donovan with the rest of the Board." *[First Amended Complaint, ¶ 38]*.

The Complaint fails to allege any unlawful act of either Defendant giving rise to a cause of action in the plaintiff's favor. "An action for civil conspiracy will lie when there is an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way, resulting in injury inflicted by one or more of the conspirators pursuant to a common scheme. *Jones v. City of Greensboro,* 51 N.C. App. 571, 583, 277 S.E.2d 562, 571 (1981), *overruled on other grounds, Fowler v. Valencort,* 334 N.C. 345, 435 S.E.2d 530 (1993). Plaintiff fails to allege any overt, tortious, or unlawful act which either Defendant committed in furtherance of the alleged conspiracy.

In an action for civil conspiracy, recovery must be on the basis of sufficiently alleged wrongful overt acts. *Shope v. Boyer,* 268 N.C. 401, 150 S.E.2d 771 (1966). Such a cause of action is not one for damages caused by the conspiracy itself, but is one for damages caused by acts committed pursuant to a formed conspiracy. *Jones, supra.* The charge of conspiracy itself does nothing more than associate the defendants together and perhaps enable a party to allege, under the proper circumstances, that the acts and conduct of one party might be admissible against all of the parties. *Shope, supra.* A plaintiff cannot use the same alleged acts to form both the basis of a claim for conspiracy to commit certain torts and the basis of claims for those torts. *Jones, supra (*affirming summary judgment on conspiracy claim because the plaintiff had alleged the same facts to establish the conspiracy as those alleged to have caused injury)*. Quoting the seminal case of *Reid v. Holden,*

242 N.C. 408, 88 S.E. 2d 125, which in turn quoted 11 Am. Jur 577, sec. 45, the *Shope* court noted that:

> 'Accurately speaking, there is no such thing as a civil action for conspiracy. The action is for damages caused by acts committed pursuant to a formed conspiracy, rather than by the conspiracy itself; and unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone. The gist of the civil action for conspiracy is the act or acts committed in pursuance thereof – the damage – not the conspiracy or the combination. . . ' To create civil liability for conspiracy there must have been an overt act committed by one or more of the conspirators pursuant to the scheme and in furtherance of the objective.

*Id.* at 405, 150 S.E.2d at 774.

Plaintiff's description of Defendant Szoka's acts as an alleged conspiracy with one or more members of Defendant Bragg Mutual's Board of Directors in furtherance of an unspecified personal vendetta against Plaintiff are nothing more than conclusory allegations. Plaintiff has failed to allege any facts that demonstrate that Defendant Szoka engaged in any acts pursuant to any kind of common scheme with any other individual in order to defraud Plaintiff. No overt acts in furtherance of any conspiracy are alleged; indeed, Plaintiff's allegation that the Defendants conspired to commit fraud against her with no description of any fraudulent acts which were allegedly committed is woefully insufficient to state a cause of action under the *Twombly* and *Iqbal* standards required for a federal complaint to be legally viable. "Mere generalities and conclusory allegations of fraud will not suffice to sustain a fraud claim." *Strum v. Exxon Co., USA,* 15 F.3d 327, 331 (4th Cir. 1994). Conclusory statements of damages do not demonstrate an agreement constituting a conspiracy. *Jones*.

Further, Plaintiff's conspiracy claim fails as it is barred by the intracorporate conspiracy doctrine. This doctrine stems from the requirement that a conspiracy necessarily must have multiple

Case 5:18-cv-00148-FL   Document 21   Filed 06/08/18   Page 26 of 30

conspirators, and if all alleged conspirators are acting on behalf of a corporation, such a conspiracy must fail, as a conspiracy cannot conspire with itself. *Scott v. Town of Taylortown,* 2014 U.S. Dist. LEXIS 115532 (M.D.N.C. 2014).   There can be no conspiracy if the actions complained of were taken in the course of official duties performed as members of the Board of Directors for Defendant Bragg Mutual.  Suing the members of the Board of Directors in their individual capacities does not change this result. *Id.* For the foregoing reasons, Plaintiff's cause of action alleging civil conspiracy should be dismissed with prejudice.

## VI.    PLAINTIFF CANNOT MAINTAIN HER CLAIM AGAINST THE DEFENDANTS FOR PUNITIVE DAMAGES

A plaintiff may recover punitive damages as a result of tortious conduct "only where the wrong is done willfully or under circumstances of rudeness, oppression or in a manner which evidences a reckless and wanton disregard of the plaintiff's rights." *Hardy v. Toler,* 288 N.C. 303, 306-07, 218 S.E.2d 342, 345 (1975).

Plaintiff has asserted a claim for punitive damages based on Defendants' alleged discriminatory and retaliatory practices in violation of federal and state law.  In the case of *Parker v. D.R. Kincaid Chair Co.,* 2011 U.S. Dist. LEXIS 85061 (W.D.N.C. Aug. 2, 2011), the United States District Court fo the Western District of North Carolina set forth the standard for awarding punitive damages in a Title VII claim, which would apply equally to a violation of any statute prohibiting retaliation:

> To recover an award of punitive damages in a Title VII claim, a plaintiff must demonstrate that the defendant engaged in aggravated conduct, and prove that the defendant engaged in a discriminatory practice . . . with malice or with reckless indifference to [plaintiff's] federally protected rights.  The terms 'malice' and 'reckless indifference' refer to the employer's knowledge that it may be acting in violation of federal law.  For claims rooted in North Carolina law, a plaintiff must

show fraud, malice, or willful and wanton conduct to support a plausible claim for punitive damages.

*Parker,* 2011 U.S. Dist. LEXIS 85061, *26-27.

Plaintiff's Complaint makes only naked, unsupported assertions that the Defendants' conduct was malicious and demonstrated a reckless disregard for Plaintiff's rights. However, conclusory assertions do not satisfy the plausibility standard. Plaintiff does not provide any details indicating that Defendants were on notice that the conduct complained was related in any manner to Plaintiff's age or sex or whether she notified anyone that she felt disparaged on account of her age or sex or that she believed the Defendants' actions were targeted to her on account of her age or sex. Plaintiff makes no allegation regarding any comparators who were treated differently on account of their age or sex. Therefore, it is impossible to plausibly infer that Defendants' actions support an award of punitive damages.

## CONCLUSION

The First Amended Complaint does not comport with the plausibility requirements of Rule 12, as established by the *Iqbal* decision. The allegations contained in Plaintiff's First Amended Complaint generally rely upon broad legal conclusions or assertions unrelated to Plaintiff's protected status that lack sufficient detail to render it plausible that Defendants have acted in violation of any federal or state law. For the foregoing reasons, Defendants Bragg Mutual Federal Credit Union and John Szoka pray that Plaintiff's First Amended Complaint be dismissed with prejudice.

This the 8th day of June, 2018.

/s/ Connie E. Carrigan
Connie E. Carrigan
N.C. State Bar No. 16583
Attorney for Defendants
SMITH DEBNAM NARRON DRAKE
SAINTSING & MYERS, LLP
Post Office Box 26268
Raleigh, North Carolina  27611
cccarrigan@smithdebnamlaw.com
Telephone:  (919) 250-2000
Fax: (919) 250-2211

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## Case No. 5:18-cv-00148-FL

| | | |
|---|---|---|
| BETTY EILEEN DONOVAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| BRAGG MUTUAL FEDERAL CREDIT | ) | |
| UNION and JOHN SZOKA, individually, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

I, Connie E. Carrigan, of Smith Debnam Narron Drake Saintsing & Myers, L.L.P., state under penalty of perjury:

That I am, and at all times hereinafter-mentioned was, more than eighteen (18) years of age; and

That on the 8th day of June, 2018, I electronically filed the foregoing Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiff's First Amended Complaint with the Clerk of Court and with Plaintiff's counsel via the CM/ECF system and served same upon the following by mailing a copy thereof, postage prepaid as follows:

Nicholas J. Sanservino, Jr.
Laura L. Noble
THE NOBLE LAW FIRM, PLLC
141 Providence Road, Suite 210
Chapel Hill, NC 27514
*Attorneys for Plaintiff*

This the 8th day of June, 2018.

/s/Connie E. Carrigan
Connie E. Carrigan

30