IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-148-FL

| | |
|---|---|
| BETTY EILEEN DONOVAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| BRAGG MUTUAL FEDERAL CREDIT ) | |
| UNION and JOHN SZOKA, individually, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on defendants' motion to dismiss plaintiff's first amended complaint (DE 20). In this posture, the issues raised are fully briefed and ripe for ruling. For the following reasons, defendants' motion is granted in part and denied in part.

## STATEMENT OF THE CASE

This case concerns the deterioration of the relationship between the chief executive officer of a company and the leadership of the company's board of directors. At issue are the motivations behind the company's decision to end its employment relationship with plaintiff.

Plaintiff Betty Eileen Donovan ("Donovan") commenced this action on April 9, 2018, alleging defendants violated the whistleblower protection provision of the Federal Credit Union Act ("FCUA"), 12 U.S.C. § 1790b, unlawfully discharged her on the basis of age and sex, and violated other provisions of state law. Plaintiff amended her complaint on May 25, 2018, alleging generally the same causes of action. Plaintiff seeks compensatory and punitive damages, costs and reasonable attorneys' fees.

The court entered its case management order on June 7, 2018. Following entry of this order, defendants filed the instant motion to dismiss. In support, defendants argue that plaintiff has failed to state sufficient facts to support any of her claims. In response, plaintiff argues that she has met the pleading standards under the Federal Rules of Civil Procedure, and her case should be allowed to proceed.

## STATEMENT OF FACTS

The facts alleged in the amended complaint may be summarized as follows. Defendant Bragg Mutual Federal Credit Union ("Bragg Mutual") is a member-owned and insured federal credit union, operating under the FCUA. (Am. Compl. ¶ 9). Defendant John Szoka is the Chairman of defendant Bragg Mutual's Board of Directors ("Board"). (Id. ¶ 10). Plaintiff worked for defendant Bragg Mutual for over thirty years, including as President and CEO of defendant Bragg Mutual beginning in November 2015. (Id. ¶¶ 22, 23).

Defendant Bragg Mutual's Board is responsible for governing its general direction and affairs. (Id. ¶ 14). Board meetings occur once a month and must comply with the FCUA, which among other things requires that minutes be kept of "all [Board] meetings." (Id. (citing 12 U.S.C. § 1761b)). Plaintiff alleges defendant Bragg Mutual's Board does not comply with a number of other duties and instructions mandated by the FCUA, including as it relates to maintaining appropriate corporate records. (Am. Compl. ¶ 19).

On multiple occasions leading up to February 2018, plaintiff advised defendants that they were engaging in conduct that violated defendant Bragg Mutual's bylaws, the FCUA and its regulations. (Id. ¶ 30). Plaintiff's good-faith complaints to defendant Szoka visibly angered and frustrated him. (Id.). Plaintiff also contacted representatives of the National Credit Union Administration ("NCUA") to inform them of defendants' misconduct. (Id. ¶ 31).

2

In or around Fall or Winter 2017, plaintiff advised the NCUA that defendants were committing several violations of the FCUA and its regulations, including for example (i) directors not carrying out their duties in good-faith and/or in a manner in which they reasonably believed was in the best interests of the membership as a whole, in violation of defendant Bragg Mutual's bylaws, the FCUA and its regulations (including 12 C.F.R. 701.4(b)(1)); (ii) not administering Bragg Mutual's affairs "fairly and impartially and without discrimination in favor of or against any particular member," in violation of 12 C.F.R. § 701.4(b)(2), the FCUA and/or defendant Bragg Mutual's bylaws; (iii) not directing management's operations in conformity with the requirements of the FCUA and other law, in violation of 12 C.F.R. § 701.4(b)(4), the FCUA and/or defendant Bragg Mutual's bylaws; (iv) unlawfully discriminating and retaliating against plaintiff, in violation of employment statutes, defendant Bragg Mutual's bylaws and/or the FCUA; (v) failing to maintain accurate minutes of all Board meetings, in violation of defendant Bragg Mutual's bylaws and/or the FCUA; and (vi) allowing defendant Szoka to completely dominate defendant Bragg Mutual's Board for his own personal interests, in violation of defendant Bragg Mutual's bylaws and/or the FCUA. (Am. Compl. ¶ 32). Defendants were aware of these complaints to the NCUA as early as Fall or Winter 2017. (Id. ¶ 33).

In the mean time, defendant Szoka expressed contempt for plaintiff. (Id. ¶ 27). On multiple occasions and as recently as late 2017, defendant Szoka advised plaintiff that due to her age, he believed she was "antiquated" and was incapable of bringing "fresh ideas" to defendant Bragg Mutual. (Id. ¶ 29). Defendant Szoka made these comments in and outside of Board meetings and sometimes in front of others, to plaintiff's substantial embarrassment and humiliation. (Id.). Plaintiff alleges defendant Szoka has not made similar discriminatory comments to male employees of comparable age to plaintiff. (Id. ¶ 29). Additionally, at a Board meeting on October 19, 2017,

3

defendant Szoka got in plaintiff's face and yelled obscenities at her for allegedly lying to the Board. (Id. ¶ 35). At defendant Szoka's request and direction (and with defendant Bragg Mutual's knowledge and consent), the minutes for the October 19, 2017 Board meeting were materially changed so that they do not accurately reflect what occurred during the meeting. (Id. ¶ 37).

On the morning of January 2, 2018, and with defendant Bragg Mutual's Chief Financial Officer ("CFO") present, plaintiff in good-faith terminated William Drewry ("Drewry") (Vice-President of Lending/Marketing Director) because of, among other things, Drewry's failure to timely comply with a "Document of Resolution" issued by the NCUA. (Id. ¶ 41). The good-faith bases for plaintiff's decision were clearly communicated to Defendant Szoka and the rest of the Board. (Id.). Later that same day, defendant Szoka rescinded the termination and reinstated Drewry to his position. (Id. ¶ 42). Although Defendant Szoka subsequently represented that his decision was supported by the rest of the Board at a meeting called earlier that day, this was false, according to plaintiff. (Id. ¶ 43). Thereafter, defendant Szoka stripped plaintiff of a material portion of her job duties, including prohibiting her from supervising and/or otherwise managing any of defendant Bragg Mutual's employees. (Id.).

Following Drewry's reinstatement by defendant Szoka, plaintiff again complained to defendants and the NCUA that defendants were violating the FCUA. (Id. ¶ 45). On February 15, 2018, at defendant Szoka's direction and after defendants became aware of plaintiff's complaint to the FCUA, the Board met for two hours in what it called a "closed session." (Id. ¶ 46). No notes were taken of the session. (Id.). After the session concluded, defendant Szoka advised plaintiff that she was being terminated for the reason that the Board "no longer trusted her judgment." (Id. ¶ 47). He demanded her work keys and all of plaintiff's work passwords were immediately terminated. (Id.). Defendants characterize plaintiff's termination as a suspension, though defendants have

4

represented to other entities that she was fired. (Id. ¶¶ 51).

Having heard nothing from defendants after February 15, 2018, plaintiff lodged additional complaints of unlawful conduct with the NCUA between early March 2018 and May 2018 and advised defendants of these charges. (Id. ¶¶ 52, 64). On April 18, 2018, defendants without explanation or notice sent a copy of the agenda for the April 19, 2018 Board meeting to plaintiff, along with a copy of the purported Board minutes from the March 15, 2018 Board meeting. (Id. ¶ 66). Plaintiff then advised she would attend the Board meeting to see why defendants had provided her such materials. (Id. ¶ 68). However, when plaintiff arrived at the meeting defendant Szoka then used the rest of the April 19, 2018 meeting to try and get plaintiff to admit that the Board somehow had a lawful reason to summarily terminate her employment, which plaintiff refused to do. (Id. ¶ 71).

Plaintiff subsequently complained to defendant Bragg Mutual's Supervisory Committee and the NCUA about defendants' unlawful conduct at the April 19, 2018 Board meeting. (Id. ¶ 74).

Additional allegations pertinent to the instant motion will be discussed below.

## COURT'S DISCUSSION

A.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual

enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B. Analysis

Plaintiff alleges several different causes of action, including 1) violation of the FCUA Whistleblower Statute, 12 U.S.C. § 1790b, 2) tortious interference with contract, 3) wrongful discharge in violation of public policy, 4) civil conspiracy, and 5) punitive damages. The court addresses these causes of action in turn.

1. Plaintiff's FCUA claim

The FCUA provides in the pertinent part that

> No insured credit union may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to the Board or the Attorney General regarding any possible violation of any law or regulation by the credit union or any director, officer, or employee of the credit union.

12 U.S.C. § 1790b(a)(1). "In enacting that amendment, Congress recognized a need to protect all credit union employees who report violations of law to the national Board or to the Attorney General." Ridenour v. Andrews Fed. Credit Union, 897 F.2d 715, 721 (4th Cir. 1990). "Since the case law interpreting section 1790b itself is extremely sparse, however, the courts have looked to case law construing comparably-phrased anti-retaliation provisions in other federal employment-discrimination statutes." Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 43 (1st Cir. 1999).

To establish retaliation, plaintiff must show "(i) that [she] engaged in protected activity, (ii) that [her employer] took adverse action against [her], and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." Foster v. Univ. of

Maryland-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015) (internal quotations omitted).

Accepting all the facts alleged in the complaint as true for the purposes of this motion, plaintiff states a claim under the FCUA. Plaintiff alleges that she reported violations of the FCUA to the NCUA, which constitutes protected activity. (Am. Compl. ¶¶ 32, 45). Defendants were aware of plaintiff's complaints to the NCUA before adverse action was taken against her. (Id. ¶¶ 33, 45). Plaintiff was terminated on February 15, 2018. (Id. ¶¶ 47, 51). Finally, as this stage in the case, the court can reasonably infer a causal relationship between the plaintiff's complaints to the NCUA and her termination. Plaintiff complained to the FCUA about alleged unlawful practices by defendants in Fall or Winter 2017, and again after the firing and reinstatement of Drewry on January 2, 2018. (Id. ¶¶ 32, 41, 45). Given the sequence of events in this case, the timing of plaintiff's termination in relation to her reports to the NCUA suggests plaintiff was fired in retaliation for reporting the acts of defendants. See Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994).

Defendants argue that plaintiff's complaint fails to state a claim because her allegations are conclusory. In particular, defendants argue that plaintiff does not allege the specific violations of the FCUA that she reported, that she advised defendants of the reports, and that her termination was caused by her reporting defendants' violations. The court rejects these arguments because plaintiff has provides examples of the allegations that she raised in her complaints to the NCUA, and also that she told defendants. (Am. Compl. ¶¶ 32, 33, 45). As discussed above, at this stage in the case, the timing of plaintiff's termination is also sufficient to raise an inference of retaliation. See Carter, 33 F.3d at 460. Therefore, defendants arguments fail.

Defendants also argue that, assuming the allegations in the complaint are true, a lawful alternative explanation for plaintiff's termination is more likely. Defendants do not rely on any case to support their assertion. Moreover, this argument fails under the standard of review for a motion

7

to dismiss under Fed. R. Civ. P. 12(b)(6), because it relies upon inferences drawn in the light most favorable to defendant. Discovery is required for defendant to substantiate this inference, in light of the well pleaded allegations in plaintiff's complaint. Accordingly the court denies defendants' motion to dismiss plaintiff's cause of action under the FCUA.

2. Plaintiff's Tortious Interference With Contract Claim

To establish a claim for tortious interference with contractual relations, plaintiff must prove:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

Krawiec v. Manly, 370 N.C. 602, 606–07 (2018) (citations omitted). An at will employee can maintain an action for tortious interference with contract if she others shows the required elements of the cause of action. See Smith v. Ford Motor Co., 289 N.C. 71, 84 (1976).

A non-outsider to a contract between a corporation and its employee is one who "though not a party to the terminated contract, had a legitimate business interest of his own in the subject matter." Id. at 87. A "non-outsider has a [q]ualified right to bring about the termination of another's terminable contract of employment when, in good faith, he believes this to be necessary to protect his own legitimate business interest or to perform his own fiduciary duty to the employer." Id. at 88; Wilson v. McClenny, 262 N.C. 121, 132–33 (1964).

Plaintiff alleges a valid contract between her and defendant Bragg Mutual. (Am. Compl. ¶¶ 22, 23, 87). Defendants argue that, because plaintiff's employment is at will, there is no contract. Even assuming plaintiff has no written employment agreement, it is a fundamental principle of law that contracts need not be in writing, and at will employment still constitutes a contract that can be tortiously interfered with. Smith, 289 N.C. at 84. Therefore, defendants' argument that no contract

8

exists fails. Defendants concede that if a valid contract exists, then plaintiff states a claim if defendant Szoka had no justification interfering with the contract between plaintiff and defendant Bragg Mutual. Accordingly, the court turns to the issue of justification in the remainder of its analysis.

As discussed above, plaintiff has successfully alleged that defendant Szoka retaliated against her for complaining to the NCUA. If defendant Szoka induced defendant Bragg Mutual to fire her for alleging violations of law under the FCUA, such inducement would be conduct exceeding what he is lawfully allowed to do as a director of a federal credit union. See, e.g., 12 C.F.R. § 701.4(b)(4). Consequently, plaintiff's allegations permit an inference of lack of justification for the act. See Krawiec, 370 N.C. at 607; see also Filmar Racing, Inc. v. Stewart, 141 N.C. App. 668, 674 (2001) (holding a non-outsider acts without justification where the complaint "admit[s] of no motive for interference other than malice"); Robinson, Bradshaw & Hinson, P.A. v. Smith, 129 N.C. App. 305, 318 (1998) (holding malice is shown where "does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties"). Once again, drawing all reasonable inferences in favor of the plaintiff at this point, the court concludes that defendant Szoka acted without justification as alleged in the complaint. (E.g., Am. Compl. ¶ 89).

Defendants rely on Varner v. Bryan to argue that defendant Szoka acted with justification in this case. In Varner, the North Carolina Court of Appeals found defendants had acted with justification where plaintiff was terminated "for personal or political reasons." Varner v. Bryan, 113 N.C. App. 697, 702 (1994). However, Varner is inapposite on the facts alleged. Here, plaintiff alleges that defendant Szoka violated federal law and retaliated against plaintiff for calling such violations to the attention of the NCUA. (Am. Compl. ¶¶ 32, 33, 45, 47). This is different from terminating an individual from personal or political reasons. Additionally, plaintiff correctly notes

that at this stage, the court cannot discern defendant Szoka's motives to reach a determination if he acted with or without justification. Therefore, based on the foregoing analysis, the court draws a reasonable inference in favor of plaintiff.

Defendant's motion to dismiss plaintiff's tortious interference with contract claim is denied.

3.  Plaintiff's Claims of Wrongful Discharge in Violation of Public Policy

The North Carolina Equal Employment Practices Act ("NCEEPA") protects "the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers" N.C. Gen. Stat. § 143-422.2. North Carolina, in evaluating claims under N.C. Gen. Stat. § 143–422.2, "look[s] to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." Abels v. Renfro Corp., 335 N.C. 209, 218 (1993); see also Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir.2000) (observing the NCEEPA has been used to support common law wrongful discharge claims).

"Absent direct evidence, the elements of a prima facie case of discrimination . . . are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd sub nom. Coleman v. Court of Appeals of Maryland, 566 U.S. 30 (2012) (Title VII); Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513–14 (4th Cir. 2006) (ADEA).

Here, plaintiff has met the prima facie case for sex discrimination. Plaintiff is a female, and invokes sex as her protected class. (See, e.g., Am. Compl. ¶¶ 8, 22). Plaintiff alleges sufficient facts to show her job performance was satisfactory. (Id. ¶ 25) ("[I]n just over two years, Ms. Donovan took Bragg Mutual from facing years of financial deficits before her tenure to a surplus of over

$950,000 for fiscal year 2017."). Plaintiff also alleges that she was fired. (Id. ¶¶ 47, 51). Finally, plaintiff also establishes that other members of the protected class were retained under apparently similar circumstances. Defendants reinstated Drewry, a male senior executive, after plaintiff terminated him on January 2, 2018, for failing to comply with a document of resolution issued by the NCUA. (Id. ¶ 41). That same day, defendants stripped plaintiff of her ability to supervise or otherwise manage defendant Bragg Mutual's employees. (Id. ¶ 42). Defendants then fired plaintiff on February 15, 2018. (Id. ¶¶ 46, 47). These allegations are sufficient to raise a prima facie case of sex discrimination under NCEEPA.

Defendants have not introduced any evidence which the court could consider as a legitimate, non-discriminatory reason for discharging plaintiff. A reason proffered in the complaint is that the Board "no longer trusted plaintiff's judgment." (Id. ¶ 47). As this stage, allegations that defendants stripped plaintiff of her supervisory authority, defendant Szoka yelled in plaintiff's face, and alleged discrepancy in pay between Drewry and plaintiff despite a significant difference in years of service at defendant Bragg Mutual, are sufficient allegations to state a claim for sex discrimination against defendants. (Id. ¶¶ 35-36, 40-42, 44).

Defendants argue that plaintiff has not alleged facts which could support a disparate treatment claim on the basis of sex. Based on the foregoing analysis, the court disagrees. Therefore, plaintiff's claim for discharge in violation of public policy is allowed to proceed as to her claim of sex discrimination.

However, plaintiff's claim of age discrimination fails to state a claim. Although plaintiff meets the first three elements of the prima facie case, she fails to allege circumstances that give rise to a reasonable inference of discrimination. In particular, plaintiff does not allege that similarly situated employees outside the protected class were treated differently, where Drewry is not alleged

to be under 40 years old. In addition, defendant Szoka's comments that plaintiff was "antiquated" and did not bring "fresh ideas," standing alone, do not allege sufficient facts to show that defendants discharged her because of her age but allowed other similarly situated parties of different age to remain. (Id. ¶ 29).[1]

Plaintiff argues that alleging two instances and approximate time period where Defendant Szoka made age-related comments is sufficient to state a claim. However, the court concludes that such statements are insufficient to give rise to a reasonable inference that defendants terminated her on the basis of her age. Consequently, plaintiff's claim for wrongful discharge on the basis of age discrimination claim is dismissed without prejudice.

Plaintiff also argues that her discharge was unlawful because she was fired in retaliation for engaging in protected activity. Plaintiff's brief states that she is not bringing a state law wrongful discharge retaliation claim based upon either Title VII or NCEEPA protected activity. (Pl. Brief in Opposition (DE 26) at 17 n. 6). Therefore, the protected activity to which she refers presumably is filing complaints under the FCUA.

The North Carolina Supreme Court has never held that violations of federal public policy can provide the basis for a wrongful discharge action in state courts. See Coman v. Thomas Mfg. Co., 325 N.C. 172, 178 (1989) ("[W]e do not bottom our opinion upon federal public policy."). Subsequent decisions by the North Carolina Court of Appeals have interpreted Coman to mean that violations of federal public policy do not provide the basis for a wrongful discharge claim. See, e.g., McDonnell v. Guilford Cty. Tradewind Airlines, Inc., 194 N.C. App. 674, 680 (2009); Whiting v. Wolfson Casing Corp., 173 N.C. App. 218, 221 (2005). Plaintiff's FCUA whistleblower protection

---

[1] The court notes that defendant Szoka's comments implicating plaintiff's age might still provide a basis for plaintiff's sex discrimination claim if defendant Szoka did not make similar comments to male employees. (See Am. Compl. ¶ 29).

12

statute is a federal public policy against retaliation. Therefore, plaintiff fails to state a retaliation claim under NCEEPA.

Defendants' motion to dismiss plaintiff's wrongful discharge claim is denied with respect to her allegations of sex discrimination, but granted without prejudice as to plaintiff's claims of age discrimination and retaliation.

4. Civil Conspiracy

"[A] complaint sufficiently states a claim for civil conspiracy when it alleges "(1) a conspiracy, (2) wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy, and (3) injury as a result of that conspiracy." Krawiec, 370 N.C. at 614 (quoting State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 444 (2008)). "In civil conspiracy, recovery must be on the basis of sufficiently alleged wrongful overt acts." Shope v. Boyer, 268 N.C. 401, 405 (1966); Reid v. Holden, 242 N.C. 408, 414-15 (1955). "Plaintiff cannot . . . use the same alleged acts to form both the basis of a claim for conspiracy to commit certain torts and the basis of claims for those torts." Jones v. City of Greensboro, 51 N.C. App. 571, 584 (1981), overruled on other grounds by Fowler v. Valencourt, 334 N.C. 345 (1993); see, e.g., Richardson v. Mancil, 208 N.C. App. 569 (2010) (citing Jones). Generally, a company cannot conspire with its agents. See Ridgeway Brands Mfg., 362 N.C. at 445. However, a company and its agents can conspire where the agent has an "independent personal stake in achieving the [company]'s illegal objective." Id.

Here, plaintiff fails to allege conduct which can form the basis of a conspiracy between defendants. Defendants' conduct provides the basis for claims for violation of the FCUA, tortious interference with contract, and wrongful discharge in violation of North Carolina public policy. These allegations cannot also support a conspiracy claim.

The only remaining conduct that plaintiff puts in issue in her complaint that she suggests is

13

a basis for conspiracy is that defendant Szoka took credit for her accomplishments at defendant Bragg Mutual's annual meeting to gain political favor with his constituents. (Am. Comp. ¶¶ 57, 102). Even taking this allegation as true, however, defendant Szoka taking credit for plaintiff's accomplishments is not a "wrongful act." See Shope, 268 N.C. at 405; Reid, 242 N.C. at 414-15. Moreover, the court does not accept plaintiff's conclusory allegation that, because she was not mentioned at the annual meeting, she suffered damages. (Am. Compl. ¶ 58); see Nemet Chevrolet, 591 F.3d at 255. Consequently, defendants' motion to dismisss plaintiff's conspiracy claim is granted without prejudice.

     5.     Punitive Damages

Plaintiff's final allegation is that defendants' acts were willful, wanton, and malicious, and therefore plaintiff should be entitled to recover punitive damages. (Am. Compl. ¶ 107). Punitive damages may be awarded only if plaintiff shows defendants are liable for compensatory damages and also proves fraud, malice, or willful or wanton conduct. See N.C. Gen. Stat. § 1D-15(a). As discussed above, plaintiff has stated a claim with respect to several causes of action. Since the parties will conduct discovery on the remaining causes of action, the court denies defendants' motion to dismiss plaintiff's punitive damages claim without prejudice to raising their arguments again at a later stage in the case.

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 20) is GRANTED IN PART and DENIED IN PART as set forth herein.

The following claims remain:

1)     Plaintiff's FCUA Whistleblower Claim;

2)     Plaintiff's Tortious Interference with Contract Claim;

3) Plaintiff's Wrongful Discharge in Violation of Public Policy, as it pertains to sex discrimination;

4) Plaintiff's Punitive Damages Claim.

The following claims are dismissed without prejudice for failure to state a claim:

1) Plaintiff's Wrongful Discharge in Violation of Public Policy, as it pertains to age discrimination and protected activity;

2) Plaintiff's Conspiracy Claim.

SO ORDERED, this the 14th day of January, 2019.

                                        LOUISE W. FLANAGAN
                                        United States District Judge